No. 21-15163

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

NATURAL RESOURCES DEFENSE COUNCIL, et al.,
*Plaintiffs-Appellants*,

v.

DEB HAALAND, in her official capacity as Secretary of the Interior, et al.
*Defendants-Appellees*,

GLENN-COLUSA IRRIGATION DISTRICT, et al.,
*Intervenor-Defendants-Appellees*

_____

On Appeal from the United States District Court, Eastern District of California
Case No. 1:05-cv-01207-JLT-EPG (Hon. Jennifer L. Thurston)

_____

## PLAINTIFFS-APPELLANTS' REPLY BRIEF
_____

KATHERINE POOLE
DOUGLAS ANDREW OBEGI
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6100


*Counsel for Plaintiff-Appellant*
*Natural Resources Defense Council*

HAMILTON CANDEE
BARBARA J. CHISHOLM
CORINNE JOHNSON
Altshuler Berzon LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151


*Counsel for Plaintiff-Appellant*
*Natural Resources Defense Council*

*(Additional counsel on following page)*

NINA ROBERTSON
MARIE E. LOGAN
Earthjustice
50 California St., Suite 500
San Francisco, CA 94111
(415) 217-2000

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................vi

INTRODUCTION ..........................................................................................1

ARGUMENT ...............................................................................................3

I.  FWS's 2015 Consultation On The Contract Renewals Was Arbitrary,
    Capricious, And Contrary To Law .......................................................3

    A. Defendants Ask This Court to Violate Fundamental Principles of
       Administrative Review ..................................................................3

    B. FWS's Exclusive Reliance on the 2008 FWS BiOp Is Contrary to *Jewell*
       and Fails to Consider Important Aspects of the Problem..............................4

       1.The 2015 concurrence contains no independent analysis of the contract
         renewals' effects on Delta Smelt and their habitat....................................4

       2. *Jewell* held that the 2008 FWS BiOp did not assess the effects of the
          contract renewals ..................................................................5

       3. FWS failed to consider compatibility with the 2008 RPA .........................6

    C. The 2015 Consultation Is Fatally Flawed on Several Other Grounds.............9

       1. FWS did not address the best available science .........................................9

       2. FWS did not analyze the SRS Contracts' full duration.............................11

       3. FWS relied on incorrect assumptions and ignored degraded baseline
          conditions................................................................................14

       4. FWS unlawfully deferred analysis of the contracts' effects on
          Delta Smelt ..............................................................................15

       5. FWS did not articulate a rational connection between its decision
          and the evidence, and its decision is counter to the evidence .................16

II. Reclamation Is Violating Its ESA Duties To Consult On The Contract Renewals And Avoid Jeopardizing Delta Smelt ..............................................16

  A. Reclamation Has Never Performed a Valid Delta Smelt Consultation on the Contract Renewals. ..................................................................16

  B. Reclamation Is Violating its Independent Duty to Ensure it Will Not Jeopardize Delta Smelt. ....................................................................18

  C. Reclamation Unlawfully Circumscribed the 2015 Consultation by Misrepresenting its Discretion in Renewing the SRS Contracts ..................18

    1. Reclamation impeded the consultation process.........................................19

    2. Reclamation misrepresented its discretion at contract renewal ...............20

      a. *Jewell* decided Reclamation's discretion over pricing and timing.......20

      b. *Jewell* rejected Reclamation's argument that it lacks discretion because it cannot "unilaterally" impose contract terms ......................21

      c. Reclamation had discretion not to renew the SRS Contracts ..............22

      d. Reclamation had discretion in negotiating water quantities ...............23

  D. NRDC Did Not Need to File a Separate Lawsuit After its 60-Day Letter ....25

III. Reclamation Has Sufficient Discretion In Performing The SRS Contracts To Reinitiate Consultation Regarding Chinook Salmon ...................................28

  A. Reclamation Only Needs "Some Discretion" to Act to Benefit Species to Reinitiate Consultation Over the Renewed Contracts ...................................28

  B. The SRS Contracts' Terms Confirm Reclamation's Discretion in Performing the Contracts ...............................................................30

    1. Reclamation has discretion to reduce project water releases ...................30

    2. Article 7(b) authorizes Reclamation to implement protections required by biological opinions during the contract term.......................................34

3. Reclamation has discretion to approve, disapprove, or condition sales of SRS Contract water ....................................................37

4. Other terms confirm Reclamation's discretion to protect species.............38

C. Federal and State Law Provide Reclamation Discretion to Implement Water Contracts to Protect Species ...............................................39

D. NRDC's Reinitation Claim Is Not Time-Barred ...........................................41

IV. NRDC's Delta Smelt Consultation Claims Regarding The DMC Contracts Are Not Moot.......................................................................................43

CONCLUSION ......................................................................................................45

SIGNATURE ATTESTATION....................................................................................46

CERTIFICATE OF COMPLIANCE........................................................................47

**Page(s)**

**Federal Cases**

*All. for the Wild Rockies v. U.S. Dep't of Agric.*,
  772 F.3d 592 (9th Cir. 2014) ....................................................26, 27

*Asfall v. L.A. Unified Sch. Dist.*,
  No. 20-55599, 2022 WL 2764747 (9th Cir. July 15, 2022) ..............................34

*Bassidji v. Goe*,
  413 F.3d 928 (9th Cir. 2005) ..............................................41

*Belaustegui v. Int'l Longshore & Warehouse Union*,
  36 F.4th 919 (9th Cir. 2022) ..............................................42

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ..............................................43

*Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*,
  No. 13-CV-3016-TOR, 2014 WL 12634296 (E.D. Wash. Jan. 31,
  2014) ..............................................26

*Conner v. Burford*,
  848 F.2d 1441 (9th Cir. 1988) ..........................................11, 13, 15, 22

*Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*,
  531 F.3d 792 (9th Cir. 2008) ..............................................42

*Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*,
  789 F.3d 1075 (9th Cir. 2015) ..........................................12, 31, 32

*Ctr. for Biological Diversity v. Environmental Protection Agency*,
  847 F.3d 1075 (9th Cir. 2017) ..........................................42, 43

*Ctr. for Biological Diversity v. Bernhardt*,
  No. 1:20-CV-00529, 2020 WL 4903844 (D.D.C. Aug. 20, 2020) ....................42

*Ctr. for Biological Diversity v. Fish & Wildlife Serv.*,
  33 F.4th 1202 (9th Cir. 2022) ..............................................3

*Ctr. for Biological Diversity v. Haaland*,
No. 19-cv-05206-JST, Dkt. 197 (N.D. Cal. Nov. 16, 2022) ................................7

*Ctr. for Biological Diversity v. Haaland*,
No. 19-cv-05206-JST, Dkt. 198 (N.D. Cal. Nov. 16, 2022) .........................7, 36

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
698 F.3d 1101 (9th Cir. 2012) ..........................................................................4

*Ctr. for Biological Diversity v. Zinke*,
900 F.3d 1053 (9th Cir. 2018) ................................................................9, 10, 11

*Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*,
140 S.Ct. 1891 (2020) ...................................................................................3, 11

*Earle v. D.C.*,
707 F.3d 299 (D.C. Cir. 2012) ........................................................................42

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
36 F.4th 850 (9th Cir. 2022) ...........................................................................13

*Envirowatch, Inc. v. Fukino*,
No. CIV 07-00016, 2007 WL 1933132 (D. Haw. June 28, 2007) ....................28

*EPIC v. Simpson Timber Co.*,
255 F.3d 1073 (9th Cir. 2001) ....................................................................29, 30

*Flint v. United States*,
906 F.2d 471 (9th Cir. 1990) ...........................................................................21

*Forest Guardians v. Bureau of Reclamation*,
462 F.Supp.2d 1177 (D.N.M. 2006) ................................................................28

*Hallstrom v. Tillamook Cnty.*,
493 U.S. 20 (1989) ............................................................................26, 27, 28

*Harrison Western Corp. v. United States*,
792 F.2d 1391 (9th Cir. 1986) .........................................................................44

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ...........................................................................38

*Karuk Tribe of Calif. v. U.S. Forest Service*,
681 F.3d 1006 (9th Cir. 2012) .................................................................*passim*

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) ...........................................................14

*N. Alaska Env't Ctr. v. Dep't of the Interior*,
983 F.3d 1077 (9th Cir. 2020) ...........................................................27

*Nat. Res. Def. Council v. Cty. of L.A.*,
840 F.3d 1098 (9th Cir. 2016) ...........................................................43

*Nat. Res. Def. Council v. Houston*,
146 F.3d 1118 (9th Cir. 1998) ..........................................................*passim*

*Nat. Res. Def. Council v. Jewell*,
749 F.3d 776 (9th Cir. 2014) ............................................................*passim*

*Nat. Res. Def Council v. Kempthorne*,
506 F.Supp.2d 322 (E.D. Cal. 2007) .................................................17

*Nat'l Ass'n of Homebuilders v. Defenders of Wildlife*,
551 U.S. 644 (2007)..........................................................................32

*Nat'l Audubon Soc'y, Inc. v. Davis*,
307 F.3d 835 (9th Cir. 2002) .............................................................24

*Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*,
480 F.3d 410 (6th Cir. 2007) .............................................................42

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
422 F.3d 782 (9th Cir. 2005) .............................................................18

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
524 F.3d 917 (9th Cir. 2008) .............................................................18

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
779 F.3d 1036 (9th Cir. 2015), *as amended* (Apr. 28, 2015) ............27

*Nw. Env't Advocs. v. Env't Prot. Agency*,
No. 1:13-CV-00263-EJL, 2019 WL 13183561 (D. Idaho Feb. 28,
2019) ................................................................................................43

*O'Neill v. United States*,
  50 F.3d 677 (9th Cir. 1995) .................................................................31, 33, 36, 38

*Orr v. Plumb*,
  884 F.3d 923 (9th Cir. 2018) .................................................................36

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Bureau of Reclamation*,
  426 F.3d 1082 (9th Cir. 2005) .........................................................3, 4, 12, 13

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Dep't of the Interior*,
  655 F.App'x 595 (9th Cir. 2016) .........................................................23

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries
  Serv.*,
  265 F.3d 1028 (9th Cir. 2001) .........................................................22

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*,
  No. 1:20-cv-00426-DAD-EPG, 2022 WL 789122 (E.D. Cal. Mar.
  11, 2022) .........................................................................................2

*Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*,
  898 F.2d 1410 (9th Cir. 1990) .........................................................22

*Rehart v. Clark*,
  448 F.2d 170 (9th Cir. 1971) .........................................................36

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
  747 F.3d 581 (9th Cir. 2014) .....................................................*passim*

*San Luis & Delta-Mendota Water Auth. v. Locke*,
  776 F.3d 971 (9th Cir. 2014) .................................................4, 6, 9, 10

*The Wilderness Soc. v. Norton*,
  434 F.3d 584 (D.C. Cir. 2006) .........................................................42

*Thompson v. U.S. Dep't of Lab.*,
  885 F.2d 551 (9th Cir. 1989) .........................................................10

*Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v.
  U.S. Dep't of Energy*,
  232 F.3d 1300 (9th Cir. 2000) .........................................................44

ix

*Turtle Island Restoration Network v. U.S. Dep't of Com.*,
  878 F.3d 725 (9th Cir. 2017) ...............................................................12

*United States v. Alpine Land & Reservoir Co.*,
  697 F.2d 851 (9th Cir. 1983) ...............................................................40

*United States v. Jingles*,
  702 F.3d 494 (9th Cir. 2012) ...............................................................17

*United States v. State Water Res. Control Bd.*,
  694 F.2d 1171 (9th Cir. 1982) .............................................................24

*W. Watersheds Project v. Kraayenbrink*,
  632 F.3d 472 (9th Cir. 2011) ...............................................................18

*WaterWatch of Oregon v. Winchester Water Control Dist.*,
  No. 3:20-CV-01927-IM, 2021 WL 4317150 (D. Or. Sept. 22,
  2021) .......................................................................................................43

*Westlands Water Dist. v. United States*,
  337 F.3d 1092 (9th Cir. 2003) .......................................................35, 36

*Wild Fish Conservancy v. Salazar*,
  628 F.3d 513 (9th Cir. 2010) .........................................................12, 18

**State Cases**

*Light v. State Water Res. Control Bd.*,
  226 Cal.App.4th 1463 (2014) ..............................................................24

*Nat'l Audubon Soc'y v. Superior Ct.*,
  33 Cal.3d 419 (1983) ............................................................................41

**Statutes**

16 U.S.C.
  §1536(a)(2)..........................................................................................9, 17
  §1536(d).....................................................................................................44
  §1540(g)(2)(A)(i).................................................................................26, 27

43 U.S.C. §372 ..........................................................................................40

x

Central Valley Project Improvement Act, Pub. L. No. 102-575 (1992)

§3404(c)(2) ...............................................................................40

§3406(b)...............................................................................24, 40

WIIN Act §4011(a)(1) ...........................................................44

## Regulations

50 C.F.R.

§402.02..................................................................7, 8, 19, 36, 37

§402.16..................................................................28, 32, 39

## Constitutional Provisions

Cal. Const. art. X, §2............................................................40

## Rules

Ninth Cir. R. 28-1(b).........................................................15, 23

Ninth Cir. R. 28-2.8 ............................................................7

# INTRODUCTION

Defendants spend pages recounting the 25-year history of general consultations on Central Valley Project ("CVP") operations, the Central Valley Project Improvement Act ("CVPIA"), and the Sacramento River Settlement ("SRS") and Delta-Mendota Canal ("DMC") Contracts. Fed. Br. at 9-15; DMC Br. at 6-14; SRS Br. at 18-24. That history cannot obscure the fact that in 2014 this Court held that the Bureau of Reclamation ("Reclamation") had "never" performed a valid Endangered Species Act ("ESA") consultation on the effects of renewing the contracts on Delta Smelt and that Reclamation possessed sufficient discretion to warrant a consultation. *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 782, 784-85 (9th Cir. 2014) (en banc).

On remand from *Jewell*, Federal Defendants again refused to confront the effects of their choice to renew 25- and 40-year contracts authorizing the withdrawal of almost 2.5 million acre-feet of water annually from the watershed. Despite their own scientists' findings that the contracts' demands result in Delta and river flows that are insufficient to protect Delta Smelt and Chinook salmon, NRDC Br. at 6-8, 23, 44, Federal Defendants abdicated their responsibility under the ESA to assess the contracts' effects.

This abdication has now reached the breaking point. As the district court adjudicating the challenge to the 2019 CVP Biological Opinions ("BiOps") recently explained, the "potential conflict" between species protections and "Reclamation's obligations to certain senior contractors" is the "800-pound gorilla in the room," and Federal Defendants "will eventually be forced to confront, or at

1

the very least fully appraise, the 800-pound gorilla." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*, No. 1:20-cv-00426-DAD-EPG, 2022 WL 789122, at \*52 (E.D. Cal. Mar. 11, 2022).

It is past time for Reclamation and the Fish and Wildlife Service ("FWS") to comply with their statutory duty to consider the effects of the contracts on protected species' habitat and impose appropriate limits on water withdrawals to ensure the survival and recovery of the impacted species. 22-ER-5104. The agencies have engaged in almost two decades of obstruction of the ESA, aiding and abetting the contractors' desire to indefinitely perpetuate the finite contract terms they negotiated more than 60 years ago, regardless of those terms' debilitating effects on public resources. As a result, the contractors have improperly obtained almost 20 years of massive water deliveries under the renewed contracts without Reclamation having ever performed a valid consultation on Delta Smelt. *See Nat. Res. Def. Council v. Houston*, 146 F.3d 1118, 1128 (9th Cir. 1998).

The district court erred in accepting the sham 2015 consultation that followed *Jewell*, which included no analysis of the contract renewals on Delta Smelt, failed to consider the best available science, and was flawed in numerous other respects. The district court also fundamentally erred in dismissing Plaintiffs-Appellants' (collectively, "NRDC") claim that reinitiation of consultation was required on the renewed SRS Contracts because new information showed excessively harmful effects on endangered Chinook salmon.

//

## ARGUMENT

## I. FWS's 2015 Consultation On The Contract Renewals Was Arbitrary, Capricious, And Contrary To Law.

FWS's cursory 2015 consultation, which relied exclusively on the 2008 FWS BiOp, was legally deficient and Defendants' efforts to justify the 2015 concurrence are unavailing.

### A. Defendants Ask This Court to Violate Fundamental Principles of Administrative Review.

The district court wrongly concluded it could uphold the 2015 consultation on any basis that could be articulated based on the record, 1-ER-0042-45, an error the SRS Contractors ask this Court to repeat, urging the Court to look beyond the rationale articulated in FWS's concurrence letter, SRS Br. at 38-40. But as the Supreme Court recently reiterated, "[i]t is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 140 S.Ct. 1891, 1907 (2020) (quotation omitted). A court "cannot infer an agency's reasoning from mere silence." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005) ("*PCFFA I*"). Rather, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id*. (quotation omitted); *see also Dep't of Homeland Sec*., 140 S.Ct. at 1907; *Ctr. for Biological Diversity v. Fish & Wildlife Serv*., 33 F.4th 1202, 1223 (9th Cir. 2022). Thus, Defendants' numerous post-hoc

//

//

3

justifications must be rejected.  *See Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1124 (9th Cir. 2012).[1]

Defendants also exaggerate the deference due to federal agencies.  SRS Br. at 33, Fed. Br. at 22.  The Court "may not automatically defer to an agency's conclusions, even when those conclusions are scientific."  *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994-95 (9th Cir. 2014) ("*Locke*").  Rather, the review must be "sufficiently probing" to "ensure that agency decisions are founded on a reasoned evaluation of the relevant factors." *Id.*  A more deferential approach "would … render judicial review generally meaningless[.]" *Id.*

### B. FWS's Exclusive Reliance on the 2008 FWS BiOp Is Contrary to *Jewell* and Fails to Consider Important Aspects of the Problem.

#### 1. The 2015 concurrence contains no independent analysis of the contract renewals' effects on Delta Smelt and their habitat.

The district court searched outside the four corners of FWS's 2015 concurrence for its reasoning because it is beyond dispute that the concurrence does *not* analyze the effects of renewing the contracts on Delta Smelt and the flows critical to their habitat.  Instead, the 2015 concurrence merely states that the 2008 FWS BiOp addressed those effects, providing no explanation or reasoning

---

[1] The SRS Contractors' cited cases, SRS Br. at 39, do not hold otherwise. *San Luis* upheld the agency's analysis as discerned from explanation in the challenged biological opinion itself.  *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 6115 (9th Cir. 2014) ("*San Luis*"); *PCFFA I*, 426 F.3d at 1091 ("we rely only on what the agency actually said in the BiOp").  *Portland Audubon Society v. Endangered Species Committee* concerned completion of the administrative record and did not condone upholding an agency's decision on any basis found in the record.  984 F.2d 1534, 1548 (9th Cir. 1993).

justifying that position.  4-ER-0748.  Defendants try to salvage the 2015 decision, first by claiming it incorporates by reference "numerous other" unspecified documents, SRS Br. at 40, even though the decision's plain text does no such thing, 4-ER-0746-49; and then by contending it "amended" the 2005 concurrence letter while misrepresenting the scope of the "analysis" in the 2005 letter as "go[ing] beyond the 2004/2005 FWS … BiOps," SRS Br. at 36-37.  But *Jewell* found the 2005 letter contained no independent analysis regarding Delta Smelt. 749 F.3d at 781; *see also* 3-ER-0525-26 (2005 concurrence stating only that the effects of contract deliveries on Delta Smelt were considered in the later-invalidated 2005 BiOp).[2]  FWS chose to base its 2015 decision on the contracts' renewals exclusively on the 2008 BiOp, 4-ER-0746-49, and now must be judged on that choice.

**2.  *Jewell* held that the 2008 FWS BiOp did not assess the effects of the contract renewals.**

FWS's position that the 2008 BiOp adequately addressed the effects of renewing the contracts on Delta Smelt is at odds with *Jewell*.  Defendants in *Jewell* argued NRDC's claim that Reclamation must consult on the contract renewals was moot because the CVP operations analyzed in the 2008 BiOp included water deliveries under the contracts.  24-ER-5658-65; NRDC_RJN2_Ex.3-22.  NRDC

---

[2] The only species analysis in the 2005 letter concerns terrestrial species.  3-ER-0521-25.  Defendants point to the letter's background information regarding the contracts' history and terms, SRS Br. at 36, but that is not an "analysis" of Delta Smelt impacts, let alone information that could save the 2015 consultation. The SRS Contractors then ask the Court to rely on Reclamation's *2003* biological assessment, SRS Br. at 36, but that outdated document is no substitute for analysis FWS refused to perform in 2015.

responded that the 2008 jeopardy BiOp did not consider the contracts' specific terms and whether they were compatible with the reasonable and prudent alternative ("RPA") required by the BiOp. NRDC_RJN2_Ex.1-15. The *Jewell* Court agreed, holding the claim was not moot because "the 2008 Opinion merely assesses the general effects of the Bureau's Plan" and "does not represent a consultation with the FWS concerning the impact of the Bureau's decision to renew the specific contracts before us." 749 F.3d at 782.

Defendants attempt to re-write *Jewell* as a limited procedural ruling that only held the claim was not moot because FWS had not gone through the formality of issuing a concurrence letter based on the 2008 BiOp. SRS Br. at 37-38; Fed. Br. at 25; DMC Br. at 27-28. But this ignores the Court's finding that the 2008 BiOp "merely assesses the general effects of the Bureau's Plan." 749 F.3d at 782. It also contravenes findings essential to the Court's decision: that the 2008 BiOp's analysis did *not* cover the contract renewals, that Reclamation had not "sought to amend the challenged contracts to incorporate the protections proposed in the 2008 Opinion," *id.*, and that "*adequate consultation* and renegotiation could lead to such revisions," *id.* at 784 (italics added).

### 3. FWS failed to consider compatibility with the 2008 RPA.

Even if *Jewell* had not resolved the issue, FWS's exclusive reliance on the 2008 BiOp in its 2015 decision is flawed because FWS failed to consider important aspects of the problem: whether the contracts were compatible with the 2008 FWS BiOp. *See Locke*, 776 F.3d at 994. Defendants claim that the 2008 BiOp considered CVP operations that included contract deliveries, Fed. Br. at 27; DMC

Br. at 28, but ignore that the 2008 BiOp found those very operations would *jeopardize* the existence of Delta Smelt and required alternative operations to meet its RPA. NRDC Br. at 20. A subsequent consultation on the contracts' renewals should have considered whether the contracts were compatible with the adjustments to Reclamation's operations that FWS's 2008 RPA required. The 2015 concurrence, however, is entirely silent on the issue. 4-ER-0746-49.

By definition, to meet the 2008 RPA, Reclamation's proposed CVP operations needed to change. *See Jewell*, 749 F.3d at 782 ("[T]he 2008 Opinion explained that the Bureau's Plan must be modified from what the Bureau envisioned in 2004 and 2005[.]"); *San Luis*, 747 F.3d at 637 ("When the FWS concludes that Reclamation's continued activities will jeopardize the smelt then, presumptively, Reclamation may not take or continue such activities."); 50 C.F.R. §402.02.[3] Despite NRDC repeatedly demonstrating a conflict between the contracts and the 2008 RPA's Delta flow requirements, NRDC Br. at 20 & n.14; NRDC_RJN2_Ex.1-11, Defendants fail to provide any facts (in the 2015 concurrence, 2008 concurrence, or administrative record) to support their baseless assertion that there is no conflict, such that FWS's failure to address the issue was not arbitrary and capricious. *See* Fed. Br. at 15, 28; DMC Br. at 16, 29-30; SRS Br. at 42, 52.[4]

---

[3] Because the prior vacatur of ESA regulations was reversed, *see* NRDC Br. at 8 n.6, *Ctr. for Biological Diversity v. Haaland*, No. 19-cv-05206-JST Dkts. 197, 198 (N.D. Cal. Nov. 16, 2022), this brief cites to the current regulations.

[4] Such disputed statements of fact without any supporting citation should be disregarded. Ninth Cir. R. 28-2.8.

Nor does this Court's decision in *San Luis* hold that the 2008 RPA permitted full implementation of the contracts, as Defendants claim. Fed. Br. at 28; DMC Br. at 30; SRS Br. at 42. *San Luis* held only that the RPA met the regulatory requirement of being "consistent with the intended purpose of the action" and "consistent with [Reclamation's] legal authority and jurisdiction." 747 F.3d at 634, 637-38 (citing 50 C.F.R. §402.02). The action's stated purpose simply was "to divert, store, redivert, and convey CVP and SWP … water consistent with applicable law." *Id*. at 637 (alterations omitted). *San Luis* never considered whether "applicable law" required renewing the contracts or supplying water pursuant to them. *See id.* On the contrary, *San Luis* stated that implementing such contracts is *not* a nondiscretionary action for ESA purposes. *Id.* at 640 & n.45.

Defendants also harp on the "tiered" or "two-track" structure of the consultations, Fed. Br. at 10, DMC Br. at 7-8, SRS Br. at 19-20, but that cannot save the agency decision, as NRDC's challenge is to the *substance* of the contract renewal consultation. Whatever structure the agency follows, it must analyze *somewhere* whether the renewed contracts will jeopardize Delta Smelt: to date, it has not. *Cf. Houston*, 146 F.3d at 1128-29 (requiring consultation on effect of water deliveries prior to renewing contracts).

Finally, Reclamation's ability to reduce water deliveries under the DMC Contracts, DMC Br. at 30, does not excuse FWS's failure to consider those contracts' compatibility with the RPA. The ability to reduce allocations to protect species does not ensure Reclamation will do so. *See Jewell*, 749 F.3d at 783 ("Nothing about the shortage provision requires the Bureau to take actions to

protect the delta smelt."). Moreover, that Reclamation might engage in future annual analyses for DMC deliveries does not satisfy the ESA's requirement for FWS to consult on the full scope of the 25-year DMC Contracts before renewal. *See* Section I.C.2, *infra*.

## C. The 2015 Consultation Is Fatally Flawed on Several Other Grounds.

Although FWS's sole reliance on the 2008 BiOp, without more, rendered the 2015 consultation legally deficient, the 2015 consultation is also deficient in numerous other ways.

### 1. FWS did not address the best available science.

The 2015 concurrence on its face fails to comply with the ESA's statutory requirement to "use the best scientific and commercial data available," 16 U.S.C. §1536(a)(2), by ignoring the 2015 MAST Report, 2014-15 fish survey results, and 2010 agency testimony, which Defendants do not dispute constituted the best available scientific evidence regarding Delta Smelt in 2015.

Under the ESA, a wildlife agency must affirmatively address the best scientific evidence in its consultation decision. *See Locke*, 776 F.3d at 995 (agency may "disagree" with or "discredit" available scientific studies, but may not "ignore" them); *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1068-69 (9th Cir. 2018) (FWS must "acknowledge" study and provide "adequate explanation and support for its determination[]" not to rely on it).

Defendants fail to cite a single case about the ESA's best available science requirement, instead wrongly contending that it is sufficient to point to data buried in the administrative record. Fed. Br. at 29-32; DMC Br. at 32-34; SRS Br. at 45.

9

Defendants conflate the APA standard for the scope of the administrative record (which includes all materials "directly or indirectly considered" by the agency, *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989)) with the distinct ESA obligation to address the best available science.[5] Silently including materials in the administrative record does not satisfy the ESA requirement to address that science in the agency's decision, especially when NRDC brought the materials to the agency's attention during the consultation. *See Locke*, 776 F.3d at 995; *Zinke*, 900 F.3d at 1053; 4-ER-0754-56.[6]

Defendants also wrongly contend that *Reclamation's* mention of the MAST Report and smelt surveys in an appendix to a document it provided FWS satisfies *FWS's* obligation to address that scientific information. Fed. Br. at 31-32; SRS Br. at 45; DMC Br. at 34. But what Reclamation said or did does not satisfy FWS's burden to address the best evidence when making its decision. Apparently recognizing that, Defendants emphasize that FWS's concurrence cites the document provided by Reclamation, albeit a different section. Fed. Br. at 31; SRS Br. at 45; DMC Br. at 34. It is grasping at straws to assert that citing a document

---

[5] This obligation is also distinct from the cases cited by Defendants addressing when an agency's decision can be upheld under the APA (*i.e.*, if the reasons can be reasonably discerned in the decision). *See* Fed. Br. at 30; SRS Br. at 39 (citing *San Luis*, 747 F.3d at 604-18).

[6] Moreover, Federal Defendants previously argued the 2010 testimony was *not* part of the record because FWS never "considered" it. FER-0062-63. The contention that there is no "material information" in the 2010 testimony when compared to the MAST Report, DMC Br. at 34, is incorrect. *See Zinke*, 900 F.3d at 1069 (agency cannot rely on briefing to explain why it ignored evidence). The agency testimony focused on fall flows, 7-ER-1407-12, 7-ER-1419-29; the MAST Report showed the importance of spring flows, NRDC Br. at 22.

on an unrelated topic constitutes an "explanation" of the best scientific evidence included in an appendix to that document. *Zinke*, 900 F.3d at 1053.

**2. FWS did not analyze the SRS Contracts' full duration.**

Federal Defendants and the SRS Contractors attempt to defend the district court's conclusion that FWS may consider only a *portion* of an action, while issuing a no-jeopardy opinion for the *entire* action, so long as FWS finds the portion it considered does not jeopardize listed species. Fed. Br. at 35; SRS Br. at 50. That approach violates the ESA's "clear mandate" that a consultation must "consider[] all stages of" the action it approves. *Conner v. Burford*, 848 F.2d 1441, 1453-58 (9th Cir. 1988) (holding FWS must analyze all subsequent activities contemplated by contracts).

Defendants' efforts to justify FWS's failure to consider 15 years of the SRS Contracts, SRS Br. at 51-52; Fed. Br. at 37, are post hoc justifications that must be disregarded. *See Dep't of Homeland Sec.*, 140 S.Ct. at 1908. Moreover, alleged "insufficient information" does not excuse a failure to analyze the entire action. *Conner*, 848 F.3d at 1453. If it was not possible for FWS to analyze the contract activities through 2045, as Federal Defendants insinuate, Fed. Br. at 37, then FWS had no business issuing a no-adverse effects finding through 2045.

Defendants therefore make up a new legal standard, arguing that FWS need not consult over the entire action as long as the scope of consultation is otherwise "meaningful." Fed. Br. at 35; SRS Br. at 51. But they do not—and cannot— identify a single case in which this Court upheld a consultation on a finite agency action that analyzed anything less than the entire action. Rather, Defendants cite

11

cases concerning an agency's selection of the consultation period for agency operations *with no end date*. *See Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 522 (9th Cir. 2010) (dam operations); *Turtle Island Restoration Network v. U.S. Dep't of Com*., 878 F.3d 725, 731-32 (9th Cir. 2017) (long-line fishing industry). Those cases are inapposite. That an agency may select some "meaningful" end date for its analysis of continuing operations is not the same as purporting to determine the effects of the operations beyond that selected scope (as FWS did here); rather, continuing actions are consulted on again once the scope of the prior consultation ends. *See Wild Fish Conservancy*, 628 F.3d at 523-24.

Defendants would also wrongly require NRDC to show that FWS's failure to analyze the entire action would harm the species. SRS Br. at 51. That would turn the consultation obligation on its head, requiring a challenger to do the agency's job of determining harm to species in order to require that the agency perform a consultation. *See Cottonwood Env't L. Ctr. v. U.S. Forest Serv*., 789 F.3d 1075, 1082 (9th Cir. 2015) (rejecting similar argument because "the [agency's] insistence that Cottonwood must establish how the failure to reinitiate consultation … would lead to different, injurious results … places an inappropriate burden on Cottonwood. … Cottonwood is not required to establish what a Section 7 consultation would reveal[.]").[7]

---

[7] Nor does *PCFFA I* require that a mismatch between the ESA analysis and the agency action be "material" to violate the ESA. SRS Br. at 51. *PCFFA I* merely explained why NMFS not considering the effects of portions of its own RPA constituted a failure to consider an important aspect of the problem. *See* 426 F.3d at 1094-95. Moreover, here, the failure to consider the effects of 15 years of massive water diversions is certainly material. 1-ER-0055.

The district court similarly made unsupportable contortions to avoid the obvious conclusion that FWS's incomplete consultation was unlawful, reversing its prior decision on Article 7(b), 1-ER-0107-08, and holding that the SRS Contracts *can* be revised during their current term in future consultations, 1-ER-0054-56. But this Court has clearly held that such an "incremental-step" consultation on contracts is impermissible. In *Conner*, FWS argued it need not consult over all leasing activities because the leases included a term, like Article 7(b), that contemplated environmental review for future actions under the lease. *Id*. at 1454-55. The Court rejected "the FWS position that protected species concerns under Section 7 could be addressed adequately at later stages of the action through further consultation," explaining:

> Appellants ask us, in essence, to carve out a judicial exception to ESA's clear mandate that a comprehensive biological opinion … be completed before initiation of the agency action. They would have us read into the ESA language to the effect that a federal agency may be excused from this requirement if, in its judgment, there is insufficient information available to complete a comprehensive opinion and it takes upon itself incremental-step consultation …. *We reject this invitation to amend the ESA. That it is the role of Congress, not the courts.*

*Id*. at 1455 (italics added); *see also Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 890 (9th Cir. 2022). FWS's position is no more viable today than it was in *Conner*. FWS should have analyzed all 40 years of the SRS Contracts' effects before the contracts were renewed.

//

//

//

### 3. FWS relied on incorrect assumptions and ignored degraded baseline conditions.

Defendants do not meaningfully dispute that FWS's concurrence does not mention the 2014/15 elimination of state Delta flow requirements, 4-ER-0746 -79;[8] that the 2008 FWS BiOp relied on those protections, Fed. Br. at 33; that the elimination of those protections degraded Delta Smelt habitat; and that Reclamation requested the waivers largely to meet contract obligations. *See* NRDC Br. at 25-26; Fed. Br. at 32-34; DMC Br. at 34-36. FWS's failure to address this clear, known conflict between the contracts and Delta flows means the 2015 concurrence failed to address a major question and relies on obviously incorrect information—namely, that the state protections to provide baseline Delta flows assumed in the 2008 BiOp would continue. FWS's 2015 analysis was arbitrary insofar as it failed to consider whether the contracts would cause jeopardy under the degraded baseline conditions, in which Delta flows are reduced in drought years to accommodate the contracts. NRDC Br. at 25-26.

Defendants' only response is that habitat degradation caused by the elimination of state protections is immaterial because when Reclamation sought the waivers, FWS concurred that their expected effects were consistent with the 2008 FWS BiOp. Fed. Br. at 34; DMC Br. at 35; SRS Br. at 49.[9] But FWS in

---

[8] The SRS Contractors' statement that "FWS specifically acknowledged the TUCP process" is wrong and cites a Reclamation document. SRS Br. at 48.

[9] The Court should disregard the SRS Contractors' extra-record evidence. SRS Br. 23 & n.5, 49 & n.9. The SRS Contractors have thrice forfeited any argument to consider that evidence, failing to move to supplement the administrative record, *see Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir.

2015 never mentioned this purported rationale.  4-ER-0746-49.  Moreover, the

relevant question in the 2015 consultation was whether the contracts would

jeopardize smelt or adversely affect their habitat over the contracts' duration, given

repeated habitat deterioration caused by eliminating state protections to

accommodate contract deliveries during drought.  That question was not

considered, let alone addressed, in FWS's concurrences in the 2014/15 waivers,

which only considered operations for several months.  *See* 4-ER-0736; 1-FedSER-

0029.

**4.  FWS unlawfully deferred analysis of the contracts' effects on Delta Smelt.**

Internally, FWS acknowledged its "concern[] as to whether implementation

of the [RPA] in the 2008 [] BiOp continues to avoid the likelihood of jeopardy"

and that "th[e] contracts may need to be revisited to ensure consistency with the

[ESA]."  3-ER-0624.  But while its concurrence admitted a "continued decline" of

Delta Smelt, FWS stated that it would wait for "future consultations" to assess

"Reclamation's ability to provide needed outflow through the Delta" under the

contracts.  4-ER-0749.  *Conner* categorically forecloses that approach.  *See* 848

F.2d at 1455.

//

---

2005); not raising the argument on summary judgment until reply, FER-0006-07;
and not making any argument on appeal, Ninth Cir. R. 28-1(b) (citing arguments
elsewhere in record not sufficient).  The contractors claim the documents are from
an administrative record, SRS SER Index at 4-9, but are referring to the purported
"record" Reclamation submitted for the unrelated, pending claim for unlawfully
taking Chinook salmon.  NRDC Br. at 13 n.10; FER-0028.

## 5. FWS did not articulate a rational connection between its decision and the evidence, and its decision is counter to the evidence.

FWS's 2015 no-adverse effects finding was contrary to the post-2008 evidence demonstrating the conflict between the contract deliveries and the Delta flows critical for Delta Smelt survival. *See* Sections I.B-I.C.4, *supra*. FWS also failed to provide any rational explanation for its finding in light of that evidence, further rendering its concurrence arbitrary and capricious. NRDC Br. at 30-31.[10]

## II. Reclamation Is Violating Its ESA Duties To Consult On The Contract Renewals And Avoid Jeopardizing Delta Smelt.

Having wrongly concluded that FWS's "consultation" in 2015 was lawful, the district court also erred in granting summary judgment to Reclamation on NRDC's claim that Reclamation is violating its distinct obligation to consult on its decision to renew the contracts. This is the same claim previously before this Court in *Jewell*, 749 F.3d 776, when the en banc panel rejected Defendants' arguments that Reclamation did not have sufficient discretion to trigger a consultation.

### A. Reclamation Has Never Performed a Valid Delta Smelt Consultation on the Contract Renewals.

Almost 20 years after executing 25- and 40-year contracts for diversion of nearly 2.5 million acre-feet annually, and nine years after this Court held that Reclamation failed to consult on the contracts and remanded the case to the district court, *Jewell*, 749 F.3d at 785, Reclamation continues to be in violation of its duty

---

[10] Tellingly, a few months after FWS's 2015 concurrence, FWS reinitiated consultation on CVP operations based on the same information before it in the contracts' consultation—namely, population decline and the "importance of outflows to all life stages of Delta Smelt." NRDC RJN Ex. 4.

to perform a valid ESA consultation before renewing the contracts. *See* 16 U.S.C. §1536(a)(2). As described *supra*, the post-remand consultation in 2015 was invalid for the multiple reasons.

Remarkably, Defendants attempt to relitigate whether the superseded *2005* consultation was valid—despite this Court's and the district court's rulings to the contrary. *See Jewell*, 749 F.3d at 785; *Nat. Res. Def. Council v. Kempthorne*, 506 F.Supp.2d 322, 387 (E.D. Cal. 2007); SRS Br. at 33-37; Fed. Br. at 42-43. In *Jewell*, the Court's findings that "the DMC Contracts and Settlement Contracts were renewed based on now-invalidated [biological] opinions" and that "Reclamation has never reconsulted with the FWS regarding the effects of renewing these contracts" were essential to the Court's holding that the 2008 FWS BiOp did not moot NRDC's claim against Reclamation—precisely because NRDC's requested relief of a valid consultation and "renegotiation of the challenged contracts based on the FWS' assessment … remains available." *Jewell*, 749 F.3d at 782. Those necessary findings foreclose Defendants' argument that the 2005 consultation remains valid. *See United States v. Jingles*, 702 F.3d 494, 499-500 (9th Cir. 2012) (law of the case doctrine applies to issues decided "by necessary implication" in previous decision). On remand, the district court agreed: "*Jewell* confirms that to the extent the 2005 contract [concurrence letters] rely on the 2004 and 2005 OCAP BiOps, the contract consultations must be treated as invalid[.]" 1-ER-0030.

//

//

17

## B. Reclamation Is Violating its Independent Duty to Ensure it Will Not Jeopardize Delta Smelt.

It was arbitrary and capricious for Reclamation to rely on FWS's 2015 concurrence with its obvious legal flaws. Reclamation's reliance was further arbitrary and capricious because Reclamation possessed "new information" that "undercut" the FWS's conclusions, *Wild Fish Conservancy*, 628 F.3d at 532, including acknowledgements by Reclamation and the State Water Resources Control Board ("State Board") that meeting contract deliveries in 2014 and 2015 reduced flows necessary for Delta Smelt protection, *see* NRDC Br. at 32-33.[11] Defendants have no response. SRS Br. at 58; Fed. Br. at 41-43; DMC Br. at 38.

## C. Reclamation Unlawfully Circumscribed the 2015 Consultation by Misrepresenting its Discretion in Renewing the SRS Contracts.

Reclamation also violated its duty to consult when it obstructed the process by misrepresenting to FWS that Reclamation lacked discretion to negotiate renewal terms. "[I]mproperly circumscrib[ing] the scope of the consultation" to shield parts of the action from review violates the ESA. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv. ("NMFS")*, 422 F.3d 782, 794 (9th Cir. 2005); *see also Wild Fish Conservancy*, 628 F.3d at 521-22; *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 929 (9th Cir. 2008) ("NMFS may not avoid determining the limits of the action agencies' discretion[.]"). Reclamation's refusal to acknowledge that it could negotiate different terms prevented FWS from fully considering the effects of the contract renewals and contravened *Jewell*'s

---

[11] This ESA claim is not limited to an administrative record. *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011); 1-SRSC_SER0015.

holding that "renegotiation of the challenged contracts" was an available remedy. *See* 749 F.3d at 782, 784-85.

### 1. Reclamation impeded the consultation process.

A crucial part of a valid consultation process is FWS's ability to consider and identify modifications to the action necessary to comply with the ESA. *See Houston*, 146 F.3d at 1129 (rescinding contracts because Reclamation should have properly consulted before renewal, when "FWS would have had more flexibility to make, and the Bureau to implement, suggested modifications to the proposed contracts"). FWS's formulation of those modifications, however, is limited to those that "can be implemented consistent with the scope of the [action] agency's legal authority and jurisdiction." 50 C.F.R. §402.02. Thus, a consultation request that conceals the extent of the action agency's discretion to protect species prevents FWS from considering modifications that could prevent adverse effects or jeopardy.

That is exactly what Reclamation did here. Although the district court declined to reach the issue, 1-ER-0072, "[p]rocedural violations of the ESA are not necessarily mooted by a finding … that a substantive violation of the ESA ha[s] not occurred." *Houston*, 146 F.3d at 1129. "The process … itself offers valuable protections against the risk of a substantive violation and ensures that environmental concerns will be properly factored into the decision-making process as intended by Congress." *Id.* at 1128-29.

Defendants' only response to Reclamation's improper circumscription of the 2015 consultation is to attack a series of strawmen, misrepresenting NRDC's

19

position as contending: *Jewell* required Reclamation to negotiate specific terms for the SRS Contracts, SRS Br. at 43-44, Fed. Br. at 44; Reclamation was required to conduct a National Environmental Policy Act-like analysis of proposed alternative actions during the ESA consultation, SRS Br. at 41-43, Fed. Br. at 45; and FWS was required to impose a specific—but unidentified—RPA, SRS Br. at 43, Fed. Br. at 44-45. NRDC does not make any of those arguments.

### 2. Reclamation misrepresented its discretion at contract renewal.

Federal Defendants do not disavow Reclamation's many representations that it *can* negotiate for different contract terms, which directly contradict Reclamation's 2015 instructions to FWS. *See* NRDC Br. at 37; 3-ER-0546-48. Nor do Defendants deny that Reclamation in fact negotiated multiple changed terms in the 2005 renewals, including different quantity, pricing, shortage, and water conservation terms, from the original contracts. NRDC Br. at 35-36. The arguments they do raise are unavailing.

### a. *Jewell* decided Reclamation's discretion over pricing and timing.

*Jewell* expressly held that Reclamation has discretion to "renegotiate[] the Settlement Contracts' terms with regard to, inter alia, their pricing scheme or the timing of water distribution." 749 F.3d at 785. Reclamation's representation otherwise to FWS, 3-ER-0546-48, was the very definition of "contrary to law." Incredibly, Federal Defendants and the SRS Contractors attempt to relitigate Reclamation's discretion over pricing, without acknowledging that their arguments contradict the en banc panel's holding, let alone explaining how this Court could overrule that holding. SRS Br. at 47, Fed. Br. at 44. It cannot. *See* NRDC Br. at

35; *see also* 17-ER-3569 (Reclamation negotiated project water rates approximately seven to eight times higher than the original contracts). Defendants also cannot identify any source prohibiting Reclamation from negotiating for higher prices, *cf. Flint v. United States*, 906 F.2d 471, 475-76 (9th Cir. 1990) (describing statutory *minimum* for CVP contract pricing), and it was arbitrary and capricious for Reclamation to tell FWS otherwise.

### b. *Jewell* rejected Reclamation's argument that it lacks discretion because it cannot "unilaterally" impose contract terms.

Federal Defendants concede that Reclamation had discretion to negotiate the SRS Contracts' "quantities, allocations, and timing of … diversions," but argue that such discretion is insufficient under the ESA because Reclamation cannot "unilaterally" impose terms on the SRS Contractors. Fed. Br. at 44, 46. Defendants made this same argument in *Jewell* and lost. *See* 24-ER-5684; NRDC_RJN2_Ex.2-24; NRDC_RJN2_Ex.1-62.

*Jewell* held that Reclamation had discretion sufficient to require an ESA consultation precisely because "the Bureau could benefit the delta smelt by *renegotiating* the Settlement Contracts' terms." 749 F.3d at 785 (italics added). *Houston* similarly held that Reclamation's discretion to negotiate for "mutually agreeable" terms when renewing water contracts required ESA consultation. *Houston*, 146 F.3d at 1126. Reclamation's discretion to negotiate for and obtain modified terms is sufficient for the ESA, which requires only that an "agency have *some discretion to influence* … the activity for the benefit of a protected species."

*Karuk Tribe of Calif. v. U.S. Forest Service*, 681 F.3d 1006,1021 (9th Cir. 2012) (en banc) (italics added).

If Federal Defendants' argument were accepted, it would remove from ESA review every contract, agreement, lease, sale and other project or transaction that involves more than one party, wherein a federal agency cannot "unilaterally" force terms on the other party. That is not the law. Federal agencies regularly consult over such projects. *See, e.g.*, *Conner*, 848 F.2d at 1453-58 (oil and gas lease sales); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1031 (9th Cir. 2001) (timber sales); *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1415 (9th Cir. 1990) (land leases).

### c. Reclamation had discretion not to renew the SRS Contracts.

Nor do Federal Defendants dispute that Reclamation had discretion not to renew the SRS Contracts, Fed. Br. at 43, consistent with *Jewell*'s holding that "nothing in the original Settlement Contracts requires the Bureau to renew the Settlement Contracts." 749 F.3d at 785. Rather, Reclamation contends such discretion is immaterial, because NRDC has not proven that not renewing the contracts would benefit Delta Smelt. Fed. Br. at 43-44. But NRDC does not need to prove what a proper consultation would show. Any necessary modifications to achieve ESA compliance are for FWS to assess and decide. *See supra* at 12. Reclamation unlawfully deprived FWS of the opportunity to do so.

The SRS Contractors also argue that Reclamation was effectively required to renew the SRS Contracts because they are somehow "essential to the operation of the CVP." SRS Br. at 14, 15. That is not a legal argument. Moreover, if for some

reason Reclamation and the SRS Contractors were unable to agree on contract

renewal terms (and they have strong incentives to reach agreement, *see* Fed. Br. at

43; SRS Br. at 18), the parties' claimed rights to Sacramento River water would be

adjudicated by a court or the State Board.  Fed. Br. at 43; 15-ER-3119-20, 15-ER-

3136.[12]

### d.  Reclamation had discretion in negotiating water quantities.

Federal Defendants concede the SRS Contractors have no legal entitlement

to renewed contracts on the same terms as the original contracts, Fed. Br. at 45-46;

that the "quantities, allocations, and timing of the diversions" in the SRS Contracts

were negotiated by Reclamation and the SRS Contractors, *id.* at 44; and that

Reclamation negotiated different quantity terms in many renewed SRS Contracts,

*see* NRDC Br. at 35-36.[13]  But Federal Defendants nevertheless contend that

Reclamation was correct to tell FWS it could *not* negotiate different quantity terms,

because the Reclamation Act, in combination with unidentified state water law,

//

---

[12] Any argument regarding Article 9(a) of the original SRS Contracts and
some perpetual promise of renewal for the same quantities is waived, because the
SRS Contractors merely quote Article 9(a) without making any argument about
how it constrains Reclamation's discretion.  SRS Br. at 17-18, 67.  *See also Pac.
Coast Fed'n of Fishermen's Ass'ns v. Dep't of the Interior*, 655 F.App'x 595, 598
(9th Cir. 2016) (rejecting "Reclamation's argument that the contracts themselves
mandated renewal" because "[a]n agency may not evade [statutory] obligations by
contracting around them").

[13] In a footnote, the SRS Contractors purport to dispute the reason for the
changed quantities, but offer no argument, simply referring the Court to their prior
briefing.  SRS Br. at 59 n.14.  That is insufficient to raise the issue with this Court.
Ninth Cir. R. 28-1(b).

removes Reclamation's discretion to negotiate different quantities.  Fed. Br. at 45.
This argument is deeply flawed.

Section 8 of the Reclamation Act provides only that Reclamation shall
"follow state water law absent a pre-empting federal statute."  *United States v.
State Water Res. Control Bd.*, 694 F.2d 1171, 1176 (9th Cir. 1982) (quotation
omitted).  "[T]o the extent [state law] prevents federal agencies from protecting
ESA-listed species, it is preempted by the ESA."  *Nat'l Audubon Soc'y, Inc. v.
Davis*, 307 F.3d 835, 852 (9th Cir. 2002).  In the CVPIA, "Congress has stated, as
clearly as it can, that Reclamation is to administer its obligations to the CVP
consistent with the mandates of the ESA."  *San Luis*, 747 F.3d at 640; CVPIA,
Pub. L. No. 102-575 (1992), §3406(b).  NRDC's opening brief cited this law,
NRDC Br. at 37, 41 n.30, yet Federal Defendants offer no rebuttal or explanation
why state law could nonetheless preclude Reclamation from negotiating quantities
to protect Delta Smelt under the ESA.  It cannot.

Nor does state law mandate that the SRS Contractors have a right to
continued diversions in the specific amounts included in the original contracts.
Fed. Br. at 45.[14]  The State Board has expressly stated that the SRS Contractors'
claims have never been "defined" or "quantified."  25-ER-5924 (quoting Decision
990); *see* 26-ER-6033; 3-ER-0365.  And Reclamation has consistently reserved the

_____

[14] Whatever the scope of the SRS Contractors' right at the time of the
original contract negotiations, their present rights remain subject to the state's
constitutional limitation of reasonable and beneficial use, and the public trust
doctrine.  *See Light v. State Water Res. Control Bd.*, 226 Cal.App.4th 1463, 1479
(2014).

24

right to challenge the extent of the SRS Contractors' asserted water rights. 25-ER-5925-26; 15-ER-3136.

No Defendant disputes that the SRS Contracts contain quantity and timing terms that are different from the SRS Contractors' claimed water rights, including provisions for substantial, highly lucrative diversions during the summer months that are unavailable under the asserted rights. NRDC Br. at 40-41. The SRS Contractors' claimed state law water rights do not entitle them to contract terms that are better than their claimed rights, in perpetuity. *See* 25-ER-5926 (the contracts "do[] not permanently, legally define the nature and extent of the SRS Contractors' senior water rights").

### D. NRDC Did Not Need to File a Separate Lawsuit After its 60-Day Letter.

NRDC's 60-day notice and supplemental complaint for this claim were timely and proper. After *Jewell*'s remand and the stay for the 2015 reconsultation, 1-ER-0143, NRDC filed its Fourth Supplemental Complaint, which added additional claims and defendants. 1-ER-0087. The district court dismissed the existing Delta Smelt ESA claim against Reclamation for lacking an updated 60-day notice regarding the 2015 consultation, 1-ER-0155. The parties proceeded to litigate the remaining claims (including an ESA Section 9 claim against Reclamation for unlawfully taking Chinook salmon). 1-ER-0130, 1-ER-0183, 24-ER-5578-82. Meanwhile, NRDC sent Reclamation an updated 60-day notice and, more than 60 days later, reasserted the previously dismissed Delta Smelt ESA claim in a Fifth Supplemental Complaint. FER-0068-70.

It is well established that if an ESA claim is dismissed for improper notice, the plaintiff remains free to provide proper notice, wait for the statutory time period to expire, and then file a new complaint asserting that claim. *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 32 (1989). Moreover, contrary to the SRS Contractors' contention, SRS Br. at 54, the notice only needs to be sent 60 days before *the ESA claim it pertains to* is commenced—not before all "litigation" is commenced. This Court held in *Wild Rockies* that plaintiffs may litigate other claims against a defendant while waiting for the 60-day notice period to expire, and may thereafter amend their complaint to add the ESA claim that is the subject of the notice. *All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 597 (9th Cir. 2014).[15] Thus, when an ESA claim is dismissed for inadequate notice but the suit continues with other valid claims, a plaintiff can supplement the existing complaint to re-assert the dismissed ESA claim (after giving notice and waiting for the statutory time period).[16] That is exactly what NRDC did here.

The SRS Contractors contend NRDC was required to reassert its claim in a separate lawsuit, SRS Br. at 55-57, but there is no basis for imposing such a requirement. The citizen suit provision requires an ESA plaintiff to wait sixty days after written notice before an "action may be commenced." 16 U.S.C.

---

[15] It is immaterial that the *Wild Rockies* plaintiff's other claims were APA claims, rather than, as here, a properly noticed Section 9 ESA claim. The SRS Contractors identify no reason why one ESA claim would forestall an amendment to add a second, unrelated ESA claim. SRS Br. at 54 n.11.

[16] *See, e.g., Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC,* No. 13-CV-3016-TOR, 2014 WL 12634296, at *3 (E.D. Wash. Jan. 31, 2014).

§1540(g)(2)(A)(i). Although the SRS Contractors rely heavily on the word "commenced," SRS Br. at 54, 56-57, *Wild Rockies* makes clear that an ESA action can be "commenced" not just by an initial complaint, but also by an amended complaint that adds an ESA claim to existing litigation. *See* 772 F.3d at 602 ("Alliance properly commenced its ESA suit under §1540(g)(2)(A)(i) when it filed the amended complaint"). And *Hallstrom* makes clear that a plaintiff is free to "commence" an ESA claim a second time, even though the claim has been previously dismissed for lack of notice. *Hallstrom*, 493 U.S. at 33.

Here, NRDC's claim was not "still pending," SRS Br. at 57, but had been dismissed by the district court. 1-ER-0183. Because NRDC's *other* claims against FWS and Reclamation were still pending, NRDC had the option, under *Wild Rockies* and *Hallstrom*, of "commencing" its properly-noticed Delta Smelt ESA claim, once the statutory period had run, either by filing a new lawsuit, or by filing supplemental complaint in the existing litigation.

Contrary to the SRS Contractors' contentions, SRS Br. at 53-54, 56, it is well-established that a plaintiff may file a supplemental pleading alleging events that occurred after the original filing in order to correct a lack of subject-matter jurisdiction over a claim. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015), *as amended* (Apr. 28, 2015) (citing *Mathews v. Diaz*, 426 U.S. 67, 75 (1976)); *N. Alaska Env't Ctr. v. Dep't of the Interior*, 983 F.3d 1077, 1084 (9th Cir. 2020). Courts then look to the supplemental complaint to determine jurisdiction. *Northstar Fin. Advisors Inc.*, 779 F.3d at 1047 (refusing to "hav[e] a case turn on the technical distinction between [the plaintiff filing] a

new complaint and a supplemental pleading").  Again, that is exactly what

happened here.[17]  NRDC's supplemental complaint was proper.

## III. Reclamation Has Sufficient Discretion In Performing The SRS Contracts To Reinitiate Consultation Regarding Chinook Salmon.

The district court erred in dismissing NRDC's claim that Reclamation must

reinitiate consultation on the SRS Contracts regarding Chinook salmon.

### A. Reclamation Only Needs "Some Discretion" to Act to Benefit Species to Reinitiate Consultation Over the Renewed Contracts.

NRDC's claim seeks reinitiation of consultation regarding the effects of the

renewed SRS Contracts on Chinook salmon, consistent with federal regulations

and *Jewell*.  22-ER-5100-01.  Whether Reclamation can be required to reinitiate

consultation depends on whether Reclamation possesses "some discretion" in its

ongoing actions pursuant to the contracts that could be exercised to benefit listed

species.  *Jewell*, 749 F.3d at 785; *see* 50 C.F.R. §402.16 ("Reinitiation of

consultation is required … where discretionary Federal involvement or control

over the action has been retained or is authorized by law").  Here, the action for

which reinitiation of consultation is required is Reclamation's ongoing operations

to perform the SRS Contracts.  22-ER-5100-101.[18]  Federal Defendants thus give

---

[17] The weakness of the SRS Contractors' position is belied by their reliance on unpublished and out-of-circuit district court orders addressing different factual situations, SRS Br. at 55-56, such as attempts to exhaust the notice period while an incorrectly-filed ESA claim remained pending—a tactic foreclosed by *Hallstrom* but not implicated here.  *See Forest Guardians v. Bureau of Reclamation*, 462 F.Supp.2d 1177, 1182 (D.N.M. 2006); *Envirowatch, Inc. v. Fukino*, No. CIV 07-00016 SOM-BMK, 2007 WL 1933132, at *3 (D. Haw. June 28, 2007).

[18] Moreover, if there was no valid Delta Smelt consultation on the renewals, Reclamation will once again possess all discretion available at renewal.  NRDC Br. at 51 n.39; 1-ER-0128.

away the game when they repeatedly concede that Reclamation indeed possesses discretion to benefit listed species when implementing the SRS Contracts. *See* Fed. Br. at 2, 47, 56.

Despite en banc precedent that consultation "is triggered so long as a federal agency retains 'some discretion' to take action for the benefit of a protected species," *Jewell*, 749 F.3d at 784 (quoting *Karuk Tribe*, 681 F.3d at 1024), Defendants argue that consultation over the contracts' effects is only triggered if Reclamation can "modify the contract[s] in a material way." SRS Br. at 60; Fed. Br. at 49. There is no such requirement. *See Jewell*, 749 F.3d at 784 ("Whether an agency must consult does not turn on the degree of discretion that the agency exercises regarding the action in question, but on whether the agency has any discretion to act in a manner beneficial to a protected species or its habitat.").

Defendants attempt to insert this requirement for modification of the contracts based on a single case—*EPIC v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir. 2001)—that pre-dates *Jewell* and *Karuk* by many years. *See* SRS Br. at 60; Fed. Br. at 49. Unlike here, the permit at issue in *EPIC* did not include any ongoing performance obligations or rights by the agency that could be exercised during the term of the permit to benefit the relevant species. *EPIC*, 255 F.3d at 1078, 1081. Thus, the only way the agency could have had "some discretion" to act to protect species was if the agency could change the terms of the permit to put more restrictions on the other party. *Id.* at 1083. Because the specific permit at issue did not provide for that, the agency in that case did not have "some discretion" to take action that could inure to the benefit of listed species. *Id.*

There is no basis to extrapolate from *EPIC* a new rule that consultation can never be reinitiated over any agency's actions pursuant to existing contracts—even where, as here, the agency retains continuing discretionary involvement and control over contract performance—if the agency cannot otherwise re-write the terms of the agreement. *See* NRDC Br. at 42-43 (collecting cases holding reinitiation can be required if there is agency discretion in implementing a preexisting agreement).[19]

## B. The SRS Contracts' Terms Confirm Reclamation's Discretion in Performing the Contracts.

Multiple terms of the SRS Contracts—any one of which is sufficient to require reinitiation—demonstrate that Reclamation has ongoing discretion in performing the contracts' provisions, and in its CVP operations pertaining to diversions, releases, and sales of contract water, that could be exercised to benefit Chinook salmon, including by enhancing cold water storage in Shasta Reservoir to ensure protective downstream temperatures.

### 1. Reclamation has discretion to reduce project water releases.

Federal Defendants do not disavow that "Reclamation can reduce 'project water' under Article (3)(i) of the SRS Contracts to comply with the ESA" and "to benefit … listed species," 24-ER-5677-78. Defendants instead contend such discretion to reduce project water as needed to comply with the ESA is somehow

---

[19] The SRS Contractors' assertion that NRDC waived its arguments regarding the governing legal standard, SRS Br. at 6, is meritless. NRDC's opening brief addressed the relevant standard; it did not cite *EPIC* precisely because *EPIC* does not involve an agency with continuing discretion under contract terms. NRDC Br. at 42-43.

insufficient because Article 3(i)'s language does not affirmatively "confer" Reclamation discretion, but rather provides that "no liability shall accrue" against Reclamation under the contracts if Reclamation reduces project water deliveries to comply with legal obligations. Fed. Br. at 52-53; SRS Br. at 69. But an "agency lacks discretion only if another legal obligation makes it impossible for the agency to exercise discretion for the protected species' benefit." *Jewell*, 749 F.3d at 784; *see Cottonwood Env't L. Ctr.*, 789 F.3d at 1087 (agency has discretion unless a "legal obligation" or "nondiscretionary statutory mandate" removes it); *San Luis*, 747 F.3d at 640 (same). By providing "no liability shall accrue" against Reclamation, Article 3(i) absolves Reclamation of any contractual obligation to provide project water, thus freeing Reclamation to reduce project water deliveries when necessary to benefit species under the ESA. 15-ER-3128; *see O'Neill v. United States*, 50 F.3d 677, 683 & n.2, 687 (9th Cir. 1995) (similar water contract provision means that "the government is excused from full performance and no breach therefore occurs"); *Jewell*, 749 F.3d at 783 (effectively identical DMC provision "absolves the United States of liability" for water shortages to protect ESA species).

The absurd interpretation of the SRS Contractors and the district court means that Reclamation's Article 3(i) discretion to reduce project water allocations in order to comply with the ESA is not sufficient discretion for ESA purposes because the ESA serves as a mandate. *See* SRS Br. at 70-71 (arguing Reclamation's compliance with the ESA is "legally mandated" and thus not discretionary); 1-ER-0101. But certainly, an agency cannot escape its obligation to

31

consult under the ESA merely *because it is required comply with the ESA itself*.
Defendants entirely misconstrue the discretion requirement, which "is designed to
avoid 'impliedly repealing [conflicting] nondiscretionary statutory mandates,'"
*Cottonwood Env't L. Ctr.*, 789 F.3d at 1086 (quoting *Nat'l Ass'n of Homebuilders
v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007)), that an agency "cannot
simultaneously obey" with the ESA, *Homebuilders*, 551 U.S. at 666. This Court
has already explained that an agency cannot claim it lacks discretion to benefit
species under the ESA "merely because it is bound to comply with another statute
that has consistent, complementary objectives," *San Luis*, 747 F.3d at 640
(quotation omitted). Reclamation's ability to reduce project water allocations to
comply with, for example, an RPA designed to protect Chinook salmon and ensure
ESA compliance, is exactly the type of discretion necessary for consultation. *See
Karuk Tribe*, 681 F.3d at 1024.

Next, Defendants wrongly assert that Reclamation's discretion over project
water under Article 3(i) is insufficient because (according to them) the 2014-15
Chinook salmon mortality that triggered the reconsultation was not caused by
project water releases. SRS Br. at 69; Fed. Br. at 52-53. Nothing in the regulation
or caselaw requires that the discretion retained under 50 C.F.R. §402.16 must be an
exact match for the conditions that trigger the reinitiation. As the district court
correctly found, Reclamation could mitigate harm caused by one aspect of the
contracts by exercising discretion over other aspects, 1-ER-0100, including, for
example, by reducing project water releases in non-drought years to increase

subsequent years' storage in Shasta.  It is precisely this type of multi-year, comprehensive analysis of the contract terms that a consultation would assess.

The SRS Contractors wrongly contend the Court must ignore how courts have interpreted, and Reclamation has performed, a near-identical project water shortage provision in many other water contracts, including the DMC Contracts.[20] *See* SRS Br. at 69; NRDC Br. at 47, *O'Neill*, 50 F.3d at 680 (similar contract provision "does not obligate the government to furnish … the full contractual amount of water when that water cannot be delivered consistently with the requirements of the Endangered Species Act").  Consideration of such evidence is proper.  *See infra* at 35-36.

The SRS Contractors' remaining arguments are raised for the first time on appeal and therefore are waived, in addition to being meritless.  SRS Br. at 70-71. First, the SRS Contractors point to additional language found in the DMC project water shortage provision, SRS Br. at 70-71, ignoring that the *operative* language in the SRS and DMC shortage provisions is identical.[21]  The additional DMC language is either not substantive or an explanation of how Reclamation will allocate reductions among DMC contractors, 8-ER-1587-88; the SRS Contracts'

---

[20] Article 3(i) is a standard article in water contracts pursuant to Reclamation policy.  DMC RJN Ex. 1 Arts. 12(a), 40.

[21] *Compare* 15-ER-3128 (SRS Art. 3(i): "If there is a shortage of project water because of actions taken by the contracting officer to meet legal obligations then … no liability shall accrue against the United States[.]") *with* 8-ER-1587 (DMC Art. 12(b): "If there is a Condition of Shortage because of … actions taken by the Contracting Officer to meet legal obligations then … no liability shall accrue against the United States[.]").

lack of similar additional language does not change the meaning of the operative language.  Second, the SRS Contractors urge that the contracts' default 25% quantity reduction during a "critical year," 15-ER-3129, should be the sole shortage provision, but that would render Article 3(i) superfluous.  The critical year reduction and Article 3(i) are compatible: the critical year reduction provides a baseline reduction in certain years, and Article 3(i)—which the SRS Contractors agreed to add upon renewal—allows for further project water reductions, as well as reductions in non-critical years, to comply with legal obligations.  15-ER-3128-29; 19-ER-4279-80.  Finally, contrary to the SRS Contractors' assertion, SRS Br. at 69, the meaning of Article 3(i) was not addressed in *Jewell*, 749 F.3d 776.

### 2. Article 7(b) authorizes Reclamation to implement protections required by biological opinions during the contract term.

In Article 7(b), the parties agreed that Reclamation retains discretion to revisit and, if necessary, depart from, the contracts' terms to implement relevant restrictions in a biological opinion.[22]  Indeed, Federal Defendants concede that "the SRS Contractors could be required, pursuant to Article 7(b) of their contracts, to comply with requirements set forth in future BiOps," Fed. Br. at 51, which in turn would provide Reclamation "discretion … to affect the availability of water under the SRS Contracts under Article 7(b)," *id.* at 52.

---

[22] NRDC raised its Article 7(b) arguments before the district court.  FER-0193.  Because the district court's interpretation of Article 7(b) in its Delta Smelt summary judgment order had not yet occurred, NRDC could not have forfeited that issue in its motion to dismiss briefing.  *See Asfall v. L.A. Unified Sch. Dist.*, No. 20-55599, 2022 WL 2764747, at *4 (9th Cir. July 15, 2022) (intervening change in law is exception to forfeiture).

Attempting to avoid the logical conclusion that Article 7(b) therefore provides sufficient discretion to reinitiate consultation, Federal Defendants argue that it only applies to future biological opinions on overall CVP operations, not to any other biological opinions. Fed. Br. at 52. But there is no such restriction in Article 7(b), which refers to "requirements applicable to the Contractor in biological opinion(s) prepared as a result of a consultation regarding the execution of this Settlement Contract[.]" 15-ER-3130. "A court cannot, under the guise of construction, add words to a contract, which would impermissibly re-write that contract." *Westlands Water Dist. v. United States*, 337 F.3d 1092, 1103 (9th Cir. 2003). While Article 7's language may include biological opinions on CVP operations, 1-ER-0054-55, it is not limited to that, and plainly includes biological opinions on the contracts themselves.[23]

The SRS Contractors also argue that Article 7(b), while imposing a requirement on the SRS Contractors to comply with biological opinions, does not give Reclamation discretion. SRS Br. at 66. But the article frees Reclamation from any contractual obligation to supply water in a way that conflicts with ESA protections for listed species. NRDC Br. at 46.

---

[23] Contradicting Federal Defendants' interpretation, the SRS Contractors contend Article 7(b) is limited to biological opinions on the *initial* contract renewal. SRS Br. at 66. But that would make no sense, given the inclusion of the term at renewal, NRDC Br. at 46, and its broader reference to any consultation "regarding the execution" of the SRS Contracts. The SRS Contractors also mischaracterize the district court's order, which held that Article 7(b) applied to consultations during the current term of the contracts. SRS Br. at 66 n.19; 1-ER-0054-56.

The SRS Contractors further complain that NRDC did not provide a citation supporting its use of extrinsic evidence. SRS Br. at 64-65. NRDC did, *see* FER-0191-92; NRDC Br. at 49 n.36, and Ninth Circuit law is clear that for federal water contracts, extrinsic evidence is admissible "to explain or supplement the agreement," *Westlands Water Dist.*, 337 F.3d at 1101, "even if the contract terms are clear," *O'Neill*, 50 F.3d at 684. *See also Rehart v. Clark*, 448 F.2d 170, 173 (9th Cir. 1971) (extrinsic evidence regarding "the circumstances of the parties and the associated surroundings" is always admissible).[24] Moreover, the district court's conflicting interpretations show the article is reasonably susceptible to different interpretations, making extrinsic evidence appropriate.

Finally, for the first time on appeal, the SRS Contractors make a convoluted argument regarding Article 7(b) and the environmental baseline. SRS Br. at 67-68. This new argument with no connection to any briefing or order below is forfeited and should be disregarded. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018).[25]

---

[24] The citations the SRS Contractors complain about are proper. *See* SRS Br. at 64 (listing 15-ER-3130 (renewed SRS Contract, and thus not extrinsic); 18-ER-3835 (original SRS Contract reflecting course of dealing and context); 24-ER-5558-59 (undisputed fact that 2004/2005 BiOp found no jeopardy, reflecting context); 4-ER-0749 (Federal Defendants' statements reflecting course of performance)).

[25] The argument, at any rate, is wrong. The SRS Contractors mischaracterize the second sentence of Article 7(b): it does not say prior deliveries will be the baseline, nor does it speak to Reclamation's discretion to implement biological opinions. 5-ER-3130. The SRS Contractors' reliance on a *2019* regulatory definition of environmental baseline—which FWS has declined to defend and is re-writing—to interpret the *2005* contracts, is misplaced. *See* SRS Br. at 67-68; *Haaland*, No. 19-cv-05206-JST, Dkt 198 at 4-6; *compare* 50 C.F.R.

### 3. Reclamation has discretion to approve, disapprove, or condition sales of SRS Contract water.

No party disputes that under the plain text of Article 3(e), Reclamation has discretion to approve, deny, or impose conditions on all sales of SRS Contract water, or that Reclamation has in fact exercised that discretion to benefit listed species in the past. *See* NRDC Br. at 49.

The SRS Contractors instead argue this discretion is insufficient to require consultation because Reclamation can only authorize or deny sales that SRS Contractors propose to make. SRS Br. at 72. But that argument runs headlong into contrary precedent. It is well-established that agencies must consult over their discretion to approve or disapprove private activity, even though exercising that discretion necessarily requires a private party to first seek to perform the activity. *See Karuk Tribe*, 681 F.3d at 1013, 1021-26 (collecting cases and requiring consultation over approval of proposed private mining activities). Here, Reclamation has discretion over whether a proposed sale can proceed and under what conditions. That is all that is required. *See id.* at 1030 (consultation duty triggered "whenever an agency makes an affirmative, discretionary decision about whether, or under what conditions, to allow private activity to proceed").

The SRS Contractors also emphasize that Reclamation's approval of a proposed sale may not be "unreasonably withheld." 15-ER-3127; SRS Br. at 72. But a reasonableness requirement is no barrier to reconsultation, as all that is

---

§402.02 (in effect Oct. 27, 2019) *with id.* (effective Oct. 28, 2019). *See also San Luis*, 747 F.3d at 640 (agencies cannot hide nondiscretionary actions in the baseline to shield them from ESA review).

necessary is that Reclamation has "some discretion" to influence or change the activity." *Karuk Tribe*, 681 F.3d at 1021. Federal Defendants ask the Court to assume the SRS Contractors would likely still divert the water themselves if Reclamation denied a sale, which is an improper (and unsupported) factual argument at the motion to dismiss stage, and which ignores that Reclamation can also impose conditions on sales to protect species. Finally, Federal Defendants make the unsubstantiated claim that Reclamation has a "nondiscretionary" obligation to deliver water to the SRS Contractors if they demand it—a claim that is contrary to state and federal environmental limitations and *San Luis*, which rejected an argument that deliveries to senior water rights holders were nondiscretionary. 747 F.3d at 640 & n.45.

### 4. Other terms confirm Reclamation's discretion to protect species.

This Court already held that a contract term effectively identical to SRS Contract Article 3(h) absolves Reclamation from liability for any water reductions "stemming from mandatory compliance with [the] ESA and CVPIA" or from drought. *Compare O'Neill*, 50 F.3d at 682-84 *with* 15-ER-3128 (Art. 3(h)). Article 3(h) thus confirms Reclamation's discretion to reduce releases to the SRS Contractors during times of drought and to implement ESA protections for Chinook salmon.[26]

---

[26] The argument that a damages provision cannot evidence discretion, Fed. Br. at 55; SRS Br. at 71 n.21, is incorrect. *See* Section III.B.1, *supra*. This Court can consider Article 3(h) because the issue is purely one of law. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).

Furthermore, Articles 9(a) and 3(a) establish that the SRS Contracts only constitute agreement over water quantities that are being put to reasonable beneficial use, *see* 15-ER-3124-25, 15-ER-3135, with the result that Reclamation may reduce its releases if contract water is being used unreasonably under current circumstances. *See* Section III.C, *infra.*

Finally, Federal Defendants agree that Article 30(b) establishes Reclamation's "right to make determinations necessary to administer [the] … Contract[s] … consistent with" federal and state law. 15-ER-3151; Fed. Br. at 56. As shown above, the SRS Contracts expressly authorize Reclamation to determine: the operations necessary to comply with biological opinions (Article 7(b)) and with legal obligations (3(i)); when drought and other unavoidable causes require shortages (3(h)); whether to approve sales (3(e)); and whether water is being put to reasonable beneficial use (9(a) and 3(a)).

## C. Federal and State Law Provide Reclamation Discretion to Implement Water Contracts to Protect Species.

Reinitiation of consultation is required where "discretionary Federal involvement or control over the action has been retained *or is authorized by law*[.]" 50 C.F.R. §402.16 (italics added). The district court's (and Defendants') insistence that discretion to benefit species must be provided in the terms of the contracts, 1-ER-0167, Fed. Br. at 49, SRS Br. at 73, is thus simply wrong. Here, Reclamation's discretion to avoid jeopardizing species when performing the SRS Contracts is authorized by multiple state and federal laws.

//

Federal Defendants do not dispute that the CVPIA requires Reclamation to "administer all … contracts" and "operate the Central Valley Project to meet all obligations under … the Federal Endangered Species Act," CVPIA, §§3404(c)(2), 3406(b). The SRS Contractors again nonsensically argue that discretion to comply with the ESA is not sufficient discretion to consult. SRS Br. at 77. But discretion is removed only by a "statutory obligation that … is both mandatory and inconsistent with … the ESA. *San Luis*, 747 F.3d at 640. The CVPIA does the opposite, confirming that Reclamation's performance of CVP contracts must comply with the ESA.[27]

Furthermore, Reclamation is obligated under federal *and* state law to ensure that CVP water is only put to reasonable and beneficial use. *See* 43 U.S.C. §372 ("beneficial use shall be the basis, the measure, and the limit of the right" to use Reclamation Act water); *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 853-55 (9th Cir. 1983) (Reclamation Act mandates a "beneficial use standard"); Cal. Const. art. X, §2; 25-ER-5919. Because reasonable and beneficial use changes over time, NRDC Br. at 53, Reclamation has continuing authority to determine whether Shasta Reservoir releases for SRS Contractors are unreasonable

---

[27] NRDC expressly preserved its CVPIA argument in its supplemental motion to dismiss briefing. FER-0187. Although that argument was brief, NRDC was following the district court's order requesting supplemental briefing. 1-ER-0167. The SRS Contractors argue that arguments raised in the supplemental briefing before the district court are waived, but if that is the case, *then all of the SRS Contractors' arguments regarding reinitiation discretion are waived*, because they did not brief discretion in their opening motion and disavowed any discretion arguments on reply. 1-SRSC_SER0070; 1-SRSC_SER0155-162.

given protected species' needs. Reclamation's independent legal obligations under those laws are distinct from, and in no way usurp, the State Board's authority to adjudicate the rights to Sacramento River water and assess the SRS Contractors' reasonable and beneficial use if such a controversy is presented to the State Board.

The reasonable and beneficial use requirement and the public trust doctrine are separate and independent requirements. *See Nat'l Audubon Soc'y v. Superior Ct.*, 33 Cal.3d 419, 445 (1983). The public trust doctrine "bars … any … party from claiming a vested right to divert waters once it becomes clear that such diversions harm the interests protected by the public trust," *id.* at 426, 437; and what best serves the public trust is an evolving and ongoing determination, *id.* at 447. The point is not that Reclamation is required to enforce the public trust, but that the SRS Contracts cannot provide any right to water use that harms the public trust, *id.* at 426, 437, and thus are no barrier to Reclamation performing the contracts to protect Chinook salmon.

The reasonable and beneficial use and public trust limitation would apply to the SRS Contractors if they diverted pursuant to their claimed state water rights, *Nat'l Audubon Soc'y*, 33 Cal.3d at 443, 452; and the SRS Contractors cite no legal authority that signing a contract for those diversions immunizes them from those laws. *See Bassidji v. Goe*, 413 F.3d 928, 937 (9th Cir. 2005) (contracts for illegal acts are unenforceable).

## D. NRDC's Reinitiation Claim Is Not Time-Barred.

Federal Defendants make a groundless statute of limitations argument as to only one of several circumstances that NRDC alleges triggered an obligation to

41

reconsult—namely the 2009 NMFS BiOp. Fed. Br. at 47-48. NRDC's complaint alleges multiple triggers that fall well within the six-year statute of limitations, including Reclamation's contract operations causing near-total mortality of Chinook salmon in 2014 and 2015, and Reclamation obtaining waivers of state protections in 2014 and 2015 to meet contract obligations. 22-ER-5078, 22-ER-5089-90, 22-ER-5101. NRDC's reinitiation claim is not time barred.

The district court did not reach Federal Defendants' argument, 1-ER-0183, and there is no reason for this Court to reach out to address it for the first time on appeal. Doing so would only implicate a portion of NRDC's claim, and this is a "court of review, not first view." *Belaustegui v. Int'l Longshore & Warehouse Union*, 36 F.4th 919, 930 (9th Cir. 2022).

Regardless, under the continuing violations and discrete violation doctrines, NRDC's claim—even to the extent based on the 2009 NMFS BiOp—is timely. *See Earle v. D.C.*, 707 F.3d 299, 307 (D.C. Cir. 2012) ("where a [regulation or] statute imposes a continuing obligation to act, a party can continue to violate it until that obligation is satisfied, and the statute of limitations will not begin to run until it does") (quotation omitted);[28] *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 417 (6th Cir. 2007) (under the discrete violation

---

[28] *See also The Wilderness Soc. v. Norton*, 434 F.3d 584, 589 (D.C. Cir. 2006); *Ctr. for Biological Diversity v. Bernhardt*, No. 1:20-CV-00529, 2020 WL 4903844, at *7 (D.D.C. Aug. 20, 2020).

NRDC's reinitiation claim is an ESA citizen suit claim. *Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 810 (9th Cir. 2008). Although *Center for Biological Diversity v. Environmental Protection Agency*, 847 F.3d

doctrine, each day of operating without environmental permit is "independently actionable individual cause[] of action").[29]

## IV. NRDC's Delta Smelt Consultation Claims Regarding The DMC Contracts Are Not Moot.

The conversion of the renewed DMC contracts into a slightly different type of Reclamation contract does not moot NRDC's claims. "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation omitted). "[T]he question is not whether the precise relief sought at the time the application for an injunction was filed is still available ... but whether there can be any effective relief." *Nat. Res. Def. Council v. Cty. of L.A.,* 840 F.3d 1098, 1102 (9th Cir. 2016) (quotation omitted).

The WIIN Act conversion the DMC Contractors employed was only available for *existing* contracts, WIIN Act §4011(a)(1), and thus the converted DMC Contracts are identical to the renewed DMC Contracts in almost all respects, including retaining the same water delivery terms—and thus the same deleterious effects on Delta Smelt, albeit with a *permanent* (not 25-year) duration. *See* DMC Br. at 20-21; DMC RJN Exs. 1-13 (Arts. 2, 3(a)); 8-ER-1552–11-ER-2375 (Arts.

_____

1075, 1087 (9th Cir. 2017) held the continuing violations doctrine did not apply to an agency's failure to consult on a one-time action, that case does not apply to a failure to reinitiate consultation over ongoing actions over which the agency retains continuing discretionary involvement.

[29] *See also WaterWatch of Oregon v. Winchester Water Control Dist*., No. 3:20-CV-01927-IM, 2021 WL 4317150, at *8 (D. Or. Sept. 22, 2021); *Nw. Env't Advocs. v. Env't Prot. Agency*, No. 1:13-CV-00263-EJL, 2019 WL 13183561, at *6 (D. Idaho Feb. 28, 2019).

2, 3(a)).  The DMC Contractors rely on *Harrison Western Corp. v. United States*, 792 F.2d 1391 (9th Cir. 1986), but there, the parties' dispute over specific performance was mooted when the parties agreed to a new, superseding contract. *Id.* at 1392-93.

Here, if the Court finds the DMC Contracts were renewed without a proper ESA consultation, then those renewed contracts were not validly executed and are unlawful.  *Houston*, 146 F.3d at 1129; 16 U.S.C. §1536(d); 1-ER-1063.  Because the harm to protected species from the agencies' failure to consult over the renewals continues through the converted contracts, it "could be ameliorated or avoided through a recission of the [converted] contract[s]," *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*, 232 F.3d 1300, 1304-05 (9th Cir. 2000), or by "an injunction requiring reconsultation with FWS" on the converted contracts and "renegotiation of the … contracts based on the FWS' assessment," *Jewell*, 749 F.3d at 782.[30]  The district court "retains broad discretion to fashion equitable remedies" and could therefore order such relief with respect to the effectively identical, converted DMC Contracts.  *Tinoqui-Chalola Council*, 232 F.3d at 1304-05.

//

//

---

[30] Notably, the DMC Contractors do *not* contend the case is moot because the alleged violation—the failure to validly consult over the DMC Contracts' renewal—has ceased.  In fact, Reclamation admits it did not engage in an ESA consultation over the contracts' conversion.  *See* Dkt. 145, *Center for Biological Diversity v. Reclamation*, No. 1:20-cv-00706-DAD-EPG (E.D. Cal.), at 1, 5-7.

## CONCLUSION

The Court should reverse the district court's decisions and direct the district court to enter summary judgment for NRDC on the Delta Smelt consultation claims.

Dated: January 25, 2023    Respectfully submitted,

*s/ Barbara J. Chisholm*

HAMILTON CANDEE
BARBARA J. CHISHOLM
CORINNE F. JOHNSON
Altshuler Berzon LLP

KATHERINE POOLE
DOUGLAS ANDREW OBEGI
Natural Resources Defense Council

*Counsel for Plaintiffs-Appellants NRDC*

s/ *Nina Robertson*

NINA ROBERTSON
MARIE E. LOGAN
Earthjustice

*Counsel for Plaintiffs-Appellants*

## SIGNATURE ATTESTATION

Pursuant to Circuit Rule 25-5(e), I, Barbara J. Chisholm, attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing content and have authorized this filing.

By:  <u>*s/ Barbara J. Chisholm*</u>
Barbara J. Chisholm

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-15163

I am the attorney or self-represented party.

**This brief contains** | 11,995 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | | .

● is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Barbara J. Chisholm | **Date** | 1/25/23
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*