No. 21-15163

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

—————————————————————————

NATURAL RESOURCES DEFENSE COUNCIL, et al.,
*Plaintiffs-Appellants*,

v.

DEB HAALAND, in her official capacity as Secretary of the Interior, et al.
*Defendants-Appellees*,

GLENN-COLUSA IRRIGATION DISTRICT, et al.,
*Intervenor-Defendants-Appellees*

On Appeal from the United States District Court, Eastern District of California
Case No. 1:05-cv-01207-JLT-EPG (Hon. Jennifer L. Thurston)

## PLAINTIFFS-APPELLANTS NATURAL RESOURCES DEFENSE COUNCIL, SAN FRANCISCO BAYKEEPER, FRIENDS OF THE RIVER, THE BAY INSTITUTE, AND WINNEMEM WINTU TRIBE'S PETITION FOR REHEARING EN BANC

NINA ROBERTSON
Earthjustice
50 California St., Suite 500
San Francisco, CA 94111
(415) 217-2000

*Counsel for Plaintiffs-Appellants*

HAMILTON CANDEE
BARBARA J. CHISHOLM
CORINNE F. JOHNSON
Altshuler Berzon LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151

*Counsel for Plaintiff-Appellant*
*Natural Resources Defense Council*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

REASONS FOR REHEARING .............................................................. 1

BACKGROUND ................................................................................... 3

ARGUMENT ......................................................................................... 5

I.    The Majority's Ruling That FWS Was "Bound" To Conclude The Contracts Would Not Jeopardize Delta Smelt Contradicts *Jewell* ................. 5

II.   The Majority's Holding That FWS Did Not Need To Consult Over The Full Scope Of The SRS Contracts Conflicts With Circuit Precedent ............. 7

III.  The Majority's Holding That Reclamation Has No Discretion To Take Action to Benefit ESA Species During The SRS Contracts' Term Is Incompatible With Supreme Court And Circuit Precedent ........................... 10

      A. Article 3(i) ................................................................................ 13

      B. Article 7(b) .............................................................................. 15

CONCLUSION ..................................................................................... 16

SIGNATURE ATTESTATION ............................................................ 18

CERTIFICATE OF COMPLIANCE .................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Conner v. Burford,*
848 F.2d 1441 (9th Cir. 1988) ..............................................................2, 7, 8, 10

*Cottonwood Env't L. Ctr. v. U.S. Forest Serv.,*
789 F.3d 1075 (9th Cir. 2015) ............................................................10

*Environmental Protection Information Center v. Simpson Timber Co.*
*(EPIC),*
255 F.3d 1073 (9th Cir. 2001) ............................................................13

*Karuk Tribe of Calif. v. U.S. Forest Serv.,*
681 F.3d 1006, 1024 (9th Cir. 2012))..................................................11

*Klamath Irrigation Dist. v. Reclamation,*
48 F.4th 934 (9th Cir. 2022) ...............................................................12

*Klamath Water Users Protective Ass'n v. Patterson,*
204 F.3d 1206 (9th Cir. 1999) ............................................................12

*National Ass'n of Home Builders v. Defenders of Wildlife,*
551 U.S. 644 (2007)..................................................................*passim*

*NRDC v. Jewell,*
749 F.3d 776 (2014)..................................................................*passim*

*O'Neill v. United States,*
50 F.3d 677 (9th Cir. 1995) ...............................................12, 14, 15

*San Luis & Delta Mendota Water Authority v. Jewell,*
747 F.3d 581 (9th Cir. 2014) ..........................................................9, 12

*Sierra Club v. Babbitt,*
65 F.3d 1502 (9th Cir. 1995) ..........................................................13, 14

*Turtle Island Restoration Network v. Department of Commerce,*
878 F.3d 725 (9th Cir. 2017) ..............................................................9

*Wild Fish Conservancy v. Salazar*,
  628 F.3d 513 (9th Cir. 2010) ................................................................2, 7, 8, 10

**Statutes**

Central Valley Project Improvement Act (CVPIA), Pub. Law 102-575,
  106 Stat. 4706 (1993)

  §3404(c)(2) ...........................................................................................11
  §3406(b) ...............................................................................................11

Endangered Species Act, Section 7, 16 U.S.C. §1536 ...........................4, 7, 13, 16

**Regulations**

50 C.F.R.

  §402.02 ...................................................................................................4
  §402.16(a) .........................................................................................10, 16

## REASONS FOR REHEARING

Ten years ago in this case, a unanimous *en banc* Court held that the Bureau of Reclamation (Reclamation) was required under the Endangered Species Act (ESA) to consult with expert wildlife agencies over the effects of executing dozens of long-term water contracts. *See NRDC v. Jewell*, 749 F.3d 776 (2014). Those contracts drain massive amounts of water from California's Bay-Delta to the devastation of endangered fish species, including Chinook salmon and Delta Smelt. Following remand from the *en banc* decision, Reclamation and the Fish and Wildlife Service (FWS) performed a consultation on the contract renewals' impacts on the Delta Smelt, but FWS failed to analyze the full agency action and Reclamation disclaimed any discretion to negotiate protective terms. Reclamation also failed to reinitiate consultation regarding imperiled salmon despite new evidence showing the contracts' detrimental effects on the species.

The panel decision here, over the dissent of Judge Gould, upheld the deficient consultation on Delta Smelt and held that Reclamation did not retain sufficient discretion to reinitiate consultation over certain contracts' impacts on Chinook salmon. The majority opinion contradicts not only the reasoning of the *en banc* Court in *Jewell*, but is contrary to other Circuit and Supreme Court precedent. Rehearing is necessary to secure and maintain the uniformity of this Court's decisions and to address issues of exceptional importance for at least the following three reasons.

First, the majority's opinion cannot be reconciled with *Jewell*. The majority holds that FWS's 2008 biological opinion on statewide water operations *required*

1

FWS to approve the renewed water contracts, without any changes, as compliant with the ESA. Op. 34, 42-43. But *Jewell*, in holding that that same 2008 biological opinion did not moot Plaintiffs' claims, found that a consultation by FWS *could* require changes in the contracts to comply with the ESA. *See* 749 F.3d at 782.

Second, as Judge Gould explains, the majority's holding that the consultation need only evaluate the effects of 25 years of the 40-year Sacramento River Settlement (SRS) Contracts directly conflicts with Circuit precedent requiring ESA consultations to analyze the entire agency action. Diss. 61-64 (citing *Conner v. Burford*, 848 F.2d 1441, 1453 (9th Cir. 1988); *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 521 (9th Cir. 2010)).

Third, despite federal law imposing an obligation to reinitiate consultation when, *inter alia*, agency action has significant, unanticipated impacts on protected species, the majority holds that Reclamation *never* needs to reconsult on the SRS Contracts' effects because those contracts purportedly strip Reclamation of any discretion to act to benefit species. That holding departs from both *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007) and *Jewell*, 749 F.3d 776, which hold that an agency lacks discretion to protect species only where there are mandatory legal obligations that are wholly inconsistent with ESA compliance. As Judge Gould recognized, the SRS Contracts' provisions in no way foreclose Reclamation from acting to benefit species during the term of the contracts, and in fact expressly require ESA compliance. Diss. 64-68.

2

This case is of exceptional importance because the majority opinion effectively immunizes many long-term water contracts from further ESA review and compliance, despite their profound impact on species on the brink of extinction. The majority's holding regarding discretion is inconsistent with multiple Circuit cases applying the ESA consultation requirement to Reclamation contracts throughout the West. Yet parties are already citing the majority's opinion to call that longstanding precedent into question. *See* Rule 28(j) Letter, *Yurok Tribe v. Klamath Water Users Ass'n*, Nos. 23-15499, 23-15521 (May 30, 2024). Rehearing should be granted to restore uniformity in the Court's decisions on these consequential issues.

## BACKGROUND

The water contracts here obligate Reclamation to provide almost 2.5 million acre-feet of water each year from the Central Valley Project (CVP) to two sets of contractors: the SRS Contractors and Delta-Mendota Canal (DMC) Contractors. AOB 4. The CVP is a large network of dams, reservoirs, canals, and pumps that stores and distributes water throughout California. Op. 13-14. Providing water to these contractors is just one of many purposes pursuant to which Reclamation operates the CVP. *Id.*

In the mid-2000s, the previous SRS and DMC Contracts expired and Reclamation executed new contracts. Op. 16. FWS performed an ESA consultation to evaluate how the contract renewals would affect Delta Smelt.

*Id.*[1]  That consultation relied entirely on the 2005 BiOp that FWS had prepared on the operations of the entire CVP.  4-ER-0746-49.  After a court invalidated the 2005 CVP BiOp, Plaintiffs[2] brought a claim that the agencies had also failed to properly consult on the contracts' renewals.  Op. 20-21.

That was the claim the *en banc* panel considered in *Jewell*, 749 F.3d 776. *Jewell* unanimously rejected the argument that the intervening 2008 BiOp on CVP operations, which had found that CVP operations *would* jeopardize Delta Smelt, mooted NRDC's claim.  *Id.* at 781-82.  *Jewell* also unanimously held that, when renewing the SRS Contracts, Reclamation at a minimum had discretion to "benefit the delta smelt by renegotiating the Settlement Contracts' terms with regard to … their pricing scheme or the timing of water distribution."  *Id.* at 785.

Following remand, Reclamation and FWS purported to consult again over the contract renewals.  Op. 24-25.  In defiance of *Jewell*'s holding, Reclamation represented to FWS that it did *not* have discretion to negotiate the SRS Contracts' pricing or timing terms, 3-ER-0546-48, thereby foreclosing FWS from considering any RPA proposing different contract terms.  *See* 50 C.F.R. §402.02 (RPA must be within scope of action agency's discretion).

---

[1] ESA Section 7 requires federal agencies like Reclamation to consult with wildlife agencies to ensure their actions do not jeopardize the existence of endangered species.  Op. 9-12.  Wildlife agencies must prepare a formal biological opinion (BiOp) if an action may adversely affect endangered species.  *Id.*  If an action will jeopardize listed species, the BiOp must identify the reasonable and prudent alternatives (RPA) to the action that are necessary to avoid jeopardy.  *Id.*

[2] Natural Resources Defense Council, San Francisco Baykeeper, Friends of the River, The Bay Institute, Pacific Coast Federation of Fishermen's Associations, and the Winnemem Wintu Tribe (collectively, NRDC).

FWS did not separately analyze the contracts' effects on Delta Smelt, and instead relied solely on the 2008 BiOp on CVP operations to find that Reclamation's execution of the contracts was *not* likely to adversely affect Delta Smelt. 4-ER-0746-49. FWS issued that finding even though the 2008 CVP BiOp concluded operations to perform the contracts *would* jeopardize Delta Smelt, did not evaluate the full 40-year term of the SRS Contracts, and did not take into account the subsequent seven years of data and research showing that the species needs increased Delta freshwater flows to survive. AOB 12.

Following this inadequate consultation, NRDC renewed its claims that Reclamation and FWS had failed to properly consult over the effects of the contracts' renewals on Delta Smelt. Op. 26-27. NRDC also added a claim that Reclamation must reinitiate consultation over its performance of the SRS Contracts due to new evidence showing that the contracts are threatening Chinook salmon with extinction. *Id.*

The district court dismissed the Chinook salmon reinitiation claim and granted summary judgment against NRDC on the Delta Smelt consultation claims. Op. 27-28. A majority of the panel affirmed over Judge Gould's dissent.

## ARGUMENT

## I. The Majority's Ruling That FWS Was "Bound" To Conclude The Contracts Would Not Jeopardize Delta Smelt Contradicts *Jewell*.

In upholding the 2015 consultation, the majority repeatedly states that the 2008 BiOp on statewide CVP operations "bound" FWS "to conclude … that the

renewal of the Contracts would not jeopardize the delta smelt." Op. 34, 42-43. The *en banc Jewell* Court addressed that same argument and rejected it.

In arguing that the 2008 CVP BiOp mooted NRDC's claim, the *Jewell* defendants contended that consulting on the contracts would be pointless because FWS would be required by the 2008 BiOp to find that the contracts did not jeopardize Delta Smelt. *E.g.*, 24-ER-5661-65, 5667-68. The Court, however, explained that was not so: The 2008 BiOp had found that Reclamation's CVP operations *would* jeopardize the Delta Smelt, and the reasonable and prudent alternatives that FWS identified to avoid jeopardy required Reclamation to change its proposed CVP operations—including, potentially, operations under the contracts. *See* 749 F.3d at 782 ("the Bureau's Plan must be modified").

NRDC's claim was not moot because Reclamation "ha[d] never reconsulted with the FWS regarding the effects of renewing these contracts, *nor ha[d] it sought to amend the challenged contracts to incorporate the protections proposed in the 2008 Opinion*." *Id*. (italics added). Therefore, NRDC's requested remedy of "reconsultation with the FWS *and renegotiation of the challenged contracts based on the FWS' assessment ... remains available*." *Id*. (italics added).

This reasoning in *Jewell* is at odds with the majority's statements that the 2008 CVP BiOp meant "FWS was bound to conclude in its 2015 letter of concurrence that the renewal of the Settlement Contracts would not jeopardize the delta smelt." Op. 43. The majority's misguided conclusion infects its entire analysis of the 2015 consultation. *See id.* 42-44.

6

**II.    The Majority's Holding That FWS Did Not Need To Consult Over The Full Scope Of The SRS Contracts Conflicts With Circuit Precedent.**

Although the SRS Contracts continue through 2045, FWS's consultation evaluated only the operations to perform the SRS Contracts through 2030.  As set forth in Judge Gould's dissent, the majority broke from longstanding Circuit precedent in upholding a consultation that considered the effects of only a portion of the agency action.  Diss. 61-64.

This Court has long held that "the ESA requires the [consultation] to analyze the effect of the *entire* agency action."  *Conner*, 848 F.2d at 1453 (italics in original); *Wild Fish Conservancy*, 628 F.3d at 521 (same).  In particular, "section 7 of the ESA on its face requires the FWS ... to consider all phases of the agency action."  *Connor*, 848 F.2d at 1453.  Properly defining "the scope of the agency action is crucial" to conducting an adequate consultation, because the wildlife agency must "take[] a look at all the possible ramifications of the agency action" in order to assess whether it complies with the ESA.  *Id.* (quotation omitted); *Wild Fish Conservancy*, 628 F.3d at 521 (same).  Thus, in *Conner*, this Court held that an ESA consultation on the execution of oil-and-gas leases must consider all post-lease activity contemplated by the leases.  *See* 848 F.2d at 1453-54.

Here, the SRS Contracts generally obligate Reclamation to provide more than two million acre-feet of water annually for 40 years.  AOB 4.  Under *Conner* and *Wild Fish Conservancy*, "FWS should have considered, at minimum, the impact of the renewed Settlement Contracts on delta smelt during the contracts' entire [40-year] term."  Diss. 64.  But FWS did not do so.  FWS's 2015

7

concurrence relied solely on the 2008 CVP BiOp, 4-ER-0746-49, which in turn used a computer model that analyzed the effects of CVP operations on Delta Smelt only through 2030. AOB 27; Diss. 61. Failing to "account for the final fifteen years of the renewed Settlement Contracts makes [FWS's consultation] deficient as to those contracts under the ESA and [Circuit] precedent." Diss. 63.

There is no justification for the majority's departure from *Conner* and *Wild Fish Conservancy*. The majority's statements that "the 2008 OCAP biological opinion considered the entire 40-year term of the Settlement Contracts" and "accounted for the implementation of the Settlement Contracts over their 40-year term," Op. 43, have no basis in the record. Even FWS does not dispute that its analysis in the 2008 BiOp stopped at 2030. *See* Fed. Br. 35-36; 1-ER-0052 (summary judgment order: "No one disputes that there is a mismatch between the scope of these two consultation processes.").

The majority incorrectly characterizes execution of the SRS Contracts as "ongoing" agency action of indeterminate length, Op. 40-43, but the contracts have a defined duration of 40 years. The majority conflates the overarching agency action in managing the CVP with Reclamation's action of executing finite SRS Contracts. Diss. 62. The subject of the 2015 consultation was the contract renewal, not overall CVP operations, and FWS's analysis "must be coextensive with th[at] agency action." *Conner*, 848 F.2d at 1457-58; Diss. 63. Under *Conner*, FWS was obligated to assess the full effects of the contracts at the time of execution. 848 F.2d at 1454-55.

The majority misapplies *Turtle Island Restoration Network v. Department of Commerce*, 878 F.3d 725 (9th Cir. 2017). *In Turtle Island*, unlike here, there was no time limit on a fishery's operation, so the agency was forced to choose a term of years in analyzing the fishery's impact. *Id.* at 739; Diss. 63.[3] Similarly, it does not matter that FWS's computer modeling in the 2008 CVP BiOp was held not to be arbitrary and capricious in *San Luis & Delta Mendota Water Authority v. Jewell*, 747 F.3d 581 (9th Cir. 2014) as a means of evaluating proposed CVP operations with no defined end date. *See* Op. 42. That decision contains no discussion of the "model's 2030 planning horizon," despite the majority's suggestion to the contrary, *id.*; and it certainly does not address whether FWS could rely exclusively on that modeling to evaluate the effects of contracts extending 15 years beyond the modeling's limits.[4] As Judge Gould wrote, this is not a situation in which "the government has … justified its choice by showing that the computer model constituted the only 'available data.'" Diss. 63-64 (quoting *Turtle Island*, 878 F.3d at 739); *see* 4-ER-0746-49 (FWS 2015 concurrence providing no explanation for its reliance on the modeling).

The majority opinion, if allowed to stand, gives wildlife agencies a free pass to approve federal actions without evaluating the full scope of their effects on

---

[3] Where agency action lacks a defined duration, the obligation to re-consult arises when the time horizon of the prior consultation expires. *See Wild Fish Conservancy*, 628 F.3d at 523-24. Under the majority's decision, of course, Reclamation can never reinitiate consultation during the 40-year term. Op. 56.

[4] The fifteen-year information deficit matters. In just the seven years between the 2008 CVP BiOp and 2015 consultation, the Delta Smelt population declined catastrophically to the lowest levels on record. AOB 23.

endangered species, which is contrary to the ESA's purpose and requirements. *See Conner*, 848 F.2d at 1454. Rehearing should be granted to eliminate the conflict the majority opinion creates with *Conner* and *Wild Fish Conservancy* and confirm Circuit law that ESA consultations must analyze the entire agency action.

## III. The Majority's Holding That Reclamation Has No Discretion To Take Action to Benefit ESA Species During The SRS Contracts' Term Is Incompatible With Supreme Court And Circuit Precedent.

Reinitiation of consultation is required "'where discretionary Federal involvement or control over the action has been retained or is authorized by law'" and "'new information reveals effects'" that may affect protected species or critical habitat "'in a manner or to an extent not previously considered.'" *Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1086 (9th Cir. 2015) (quoting 50 C.F.R. §402.16(a)). The majority opinion concludes that Reclamation, in executing the SRS Contracts—which themselves expressly provide for Reclamation's ESA compliance—nonetheless relinquished all discretion to implement the contracts in a manner that would benefit Chinook salmon. Op. 51-56. Yet, as Judge Gould recognized, Reclamation retains discretion under the SRS Contracts to reduce the water provided to contractors and take other steps a wildlife agency finds are necessary "if the ongoing contractual terms would jeopardize … species such as chinook salmon." Diss. 66.[5] The majority's holding to the contrary misapplies the Supreme Court's decision in *Home Builders*, 551

---

[5] Juvenile salmon need sufficiently cold water to survive. Meeting the SRS Contract demands in spring and summer requires Reclamation to drain Shasta Reservoir of its coldwater reserves before juveniles hatch in the fall. AOB 44.

U.S. 644, and conflicts with numerous Circuit cases addressing ESA consultation and water contracts.

The ESA's consultation requirement "covers only discretionary agency actions and does not attach to actions … that an agency is *required* by statute to undertake[.]" *Home Builders*, 551 U.S. at 669 (italics in original). This Court has repeatedly held *en banc* that consultation "is triggered so long as a federal agency retains 'some discretion' to take action for the benefit of a protected species." *Jewell*, 749 F.3d at 784 (quoting *Karuk Tribe of Calif. v. U.S. Forest Serv.*, 681 F.3d 1006, 1024 (9th Cir. 2012)). "The agency lacks discretion only if another legal obligation makes it impossible for the agency to exercise discretion for the protected species' benefit." *Id.*

Far from making compliance with the ESA "impossible," the federal statute that governs the CVP, the Central Valley Project Improvement Act (CVPIA), expressly requires Reclamation to "administer all … contracts" and "operate the Central Valley Project to meet all obligations under … the Federal Endangered Species Act." CVPIA, Pub. Law 102-575, 106 Stat. 4706 (1993) §§3404(c)(2), 3406(b). In the CVPIA, "Congress has stated, as clearly as it can, that Reclamation is to administer its obligations to the CVP consistent with the mandates of the ESA." *San Luis*, 747 F.3d at 640; *see* 15-ER-3118 (SRS Contracts are entered into pursuant to Reclamation's authority under CVPIA).

The majority holds that the *SRS Contracts*—as opposed to any competing statutory mandate—divest Reclamation of discretion to comply with the ESA. Op. 49-56. This ruling that a federal agency can contract away its statutory ESA

11

obligations is a radical departure from Circuit precedent regarding other federal water contracts and is at odds with *Home Builders*. *See* 551 U.S. at 662-63; *San Luis*, 747 F.3d at 640 n.45 (CVP contracts with senior contractors do not prevent ESA compliance under *Home Builders*); *O'Neill v. United States*, 50 F.3d 677, 682, 686 (9th Cir. 1995) (ESA applied to CVP water contracts); *Klamath Irrigation Dist. v. Reclamation*, 48 F.4th 934, 940 (9th Cir. 2022) ("Reclamation is … responsible for managing the Klamath Project in a manner consistent with its obligations under the ESA."); *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999) ("when … Reclamation[] decides to take action, the ESA generally applies to the contract").

The majority completely misreads *Home Builders*, finding that Reclamation's "mandatory legal obligation[]" to comply with the ESA and its corresponding ability to reduce water deliveries, as set forth in the SRS Contracts, "is not a source of discretion." Op. 53 (discussing SRS Contract Art. 3(i)). That holding is nonsensical. The *Home Builders* language the majority relies on discusses a situation involving a *competing* statutory mandate, not obligations imposed by the ESA. *Id.* (quoting *Home Builders*, 551 U.S. at 669); *see Jewell*, 749 F.2d at 780 (*Home Builders* "resolve[d] the problem of an agency being unable to simultaneously obey both [the ESA] and a separate statute which expressly requires an agency to take a conflicting action") (cleaned up). Given that an agency does not lack discretion to comply with the ESA "merely because it is bound to comply with another statute that has consistent, complementary objectives," *San Luis*, 747 F.3d at 640 (quotation omitted), an agency certainly

does not relinquish discretion by, as here, agreeing to contracts that acknowledge and preserve its ability to comply with the ESA itself. *See* 15-ER-3130 (Art. 7(b): requiring compliance with ESA Section 7 consultations); 15-ER-3151 (Art. 30(b): authorizing Reclamation to make necessary determinations consistent with federal law); *see also* 15-ER-3128 (Arts. 3(h), (i)).

As Judge Gould explained, the following terms of the SRS Contracts confirm that Reclamation did not surrender its ability to meet its ESA obligations: rather, the agency retained "sufficient contractual discretion so that the ESA required Reclamation to reinitiate consultation." Diss. 64.[6]

## A. Article 3(i)

Article 3(i) provides:

> [I]f there is a shortage of Project Water because of actions taken by [Reclamation] to meet legal obligations, then ... no liability shall accrue against the United States ... for any damage … arising therefrom.

15-ER-3128.

The majority holds this provision did not "give Reclamation discretion" to "alter the Settlement Contract." Op. 52-53. But federal contracts do not need to affirmatively "give" discretion to agencies to act to protect species. The question

---

[6] Judge Gould also correctly describes the majority's misplaced reliance on *Environmental Protection Information Center v. Simpson Timber Co. (EPIC)*, 255 F.3d 1073 (9th Cir. 2001). Diss. 65-66. That case, which predates *Home Builders* and *Jewell*, concerned a one-time federal permit for private conduct without any continuing performance obligations or rights by the agency that could be exercised to benefit the relevant species. Diss. 65-66; *see EPIC*, 255 F.3d at 1078, 1081 (citing *Sierra Club v. Babbitt*, 65 F.3d 1502, 1507-08 (9th Cir. 1995) (one-time federal right of way granted to private party)). In contrast, Reclamation here continually operates Shasta Dam to provide water to SRS Contractors.

under *Homebuilders* and *Jewell* is whether a mandatory, conflicting legal obligation *precludes* an agency from acting to protect species. *See* 551 U.S. at 669; 749 F.3d at 784. Nor is the relevant discretion limited to discretion to "alter" the contracts' terms. *See Jewell*, 749 F.3d at 784 ("Whether an agency must consult does not turn on the *degree* of discretion … but on whether the agency has any discretion[.]") (italics in original).

The majority reasoned Article 3(i) did not demonstrate discretion because the provision only "limits Reclamation's liability for damages." Op. 53. But removing liability is all that is necessary to confirm that Reclamation can depart from the terms of the contracts to protect species. In *O'Neill*, this Court held that a similar CVP water contract provision "excused" Reclamation "from delivering the entire contractual amount of water" if doing so is inconsistent with ESA requirements. 50 F.3d at 680, 683-84, 687; *see also* Diss. 67 (Article 3(i) makes it "implicit that there will be times when Reclamation will not be able to perform on its contract" in order to comply with the ESA). This Court also previously recognized that the *O'Neill* water contracts, which include shortage provisions like Article 3(i), involve discretionary agency action requiring consultation. *See Babbitt*, 65 F.3d at 1508.

Indeed, FWS and Reclamation have previously admitted that Article 3(i) confirms Reclamation's discretion, including representing to the *Jewell* Court that "Reclamation can reduce 'project water' under Article (3)(i) of the SRS Contracts to comply with the ESA," and "[s]hould it ever prove necessary for project water under the SRS contracts to be reduced to meet legal obligations under the ESA to

14

benefit … species, Article 3(i) gives Reclamation the … ability to do so[.]" 24-ER-5677-78.[7] The majority's view of Article 3(i) cannot be reconciled with precedent or the contracts' plain language.[8]

## B. Article 7(b)

Article 7(b) provides:

> The Contractor shall comply with requirements applicable to the Contractor in biological opinion(s) prepared as a result of a consultation regarding the execution of this Settlement Contract undertaken pursuant to … the Endangered Species Act[.]

15-ER-3130.

Judge Gould and the district court were correct to hold that "Reclamation has discretion to 'revisit' the terms of the Settlement Contracts under Article 7(b) for the benefit of chinook salmon." Diss. 66 (quoting 1-ER-0055). Federal Defendants concede that Reclamation has "discretion … to affect the availability of water under the SRS Contracts under Article 7(b)." Fed. Br. at 52. That is how Reclamation has long understood the contracts. *See* 3-ER-0548. FWS relied on Reclamation's representation to conclude that the SRS Contracts could be revised

---

[7] The SRS Contractors cannot claim Article 3(i) means something different here than in other Reclamation contracts simply because they assert state law rights to divert water from the Sacramento River. The SRS Contractors' claimed "rights" have never been adjudicated by the State Water Resources Control Board, and Reclamation disputes those rights. 25-ER-5924-26; AOB 40; Reply 24-25.

[8] Article 3*(h)* similarly reflects Reclamation's discretion: It absolves Reclamation of liability for "a shortage of water … on account of errors in operation, drought, or unavoidable causes." 15-ER-3128. This is identical to the contract language interpreted in *O'Neill*, 50 F.3d at 683-84. The majority's holding that Article 3(h) does not confirm discretion, Op. 54, is wrong for the same reasons as its Article 3(i) holding, and directly conflicts with *O'Neill*.

if consultation on the contracts had to be reinitiated to "ensure consistency with the [ESA]." 4-ER-0749; Diss. 67-68.

In ruling that the SRS Contracts foreclose Reclamation from exercising discretion to take ESA-required action, the majority's only explanation of Article 7(b) and its explicit reference to ESA Section 7 obligations is that the article "applies only to the Sacramento River Contractors and gives no authority to Reclamation." Op. 52. But because the SRS Contractors have no contractual right to performance that conflicts with the requirements of a BiOp under Article 7(b), Reclamation necessarily has the right to take actions to comply with the ESA. Moreover, by referring to "biological opinion(s)" regarding contract execution in the plural, Article 7(b) is best read as recognizing the possibility of a reinitiated consultation on the SRS Contracts.[9]

The Court should rehear this case to confirm the SRS Contracts do not surrender Reclamation's discretion to protect species under the ESA, and to conform the decision with Circuit and Supreme Court precedent.

## CONCLUSION

*En banc* rehearing should be granted to correct the majority's erroneous rulings.

Dated: July 8, 2024                    Respectfully submitted,

*s/ Barbara J. Chisholm*

---

[9] Reinitiation is also required where discretion is "authorized by law." 50 C.F.R. §402.16(a). The state law doctrines of reasonable and beneficial use and public trust authorize such discretion. Reply 40-41.

16

HAMILTON CANDEE
BARBARA J. CHISHOLM
CORINNE F. JOHNSON
Altshuler Berzon LLP

*Counsel for Plaintiff-Appellant Natural
Resources Defense Council*

s/ *Nina Robertson*

NINA ROBERTSON
Earthjustice

*Counsel for Plaintiffs-Appellants*

**SIGNATURE ATTESTATION**

Pursuant to Circuit Rule 25-5(e), I, Barbara J. Chisholm, attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing content and have authorized this filing.

By: *s/ Barbara J. Chisholm*
Barbara J. Chisholm

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 21-15163

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 4,200 .

*(Petitions and responses must not exceed 4,200 words)*

## OR

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Barbara J. Chisholm    **Date** | Jul 8, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/2021*